## Kline's Estate.

1. Parties to an ante-nuptial contract are not like ordinary contractors dealing at arms' length, they stand in a confidential relation demanding *uberrimam fidem.*

2. Although it may not be necessary to show affirmatively that there was a full disclosure of circumstances, &c., in making such contract, yet if the provision for the wife be unreasonably disproportionate to the means of the husband, it raises the presumption of designed concealment and throws on him the burden of proof.

January 17th 1870.    Before THOMPSON, C. J., SHARSWOOD and WILLIAMS, JJ.    AGNEW, J., at Nisi Prius.

This was an appeal, No. 52, to July Term 1870, from the Orphans' Court of *Montgomery county,* in the estate of Gabriel Kline, deceased.

The administrators, &c., of the decedent filed their administration account, in which they charged themselves with $9568.07, proceeds of personal estate, and $7244, proceeds of real estate.

After taking sundry credits, the balance on their account was $12,951.91.    One of the items of credit was, " Ann Kline, widow of said deceased, to be paid at her decease to the heirs and legal representatives of Gabriel Kline, dec'd, $800."

To the last-mentioned item the widow excepted, and the account was referred to Charles T. Miller, Esq., as auditor, to adjust and report distribution.

By the report of the auditor it appeared that the credit of $800 was based on the following instrument, called a marriage agreement:

" This indenture, made the 21st day of March 1850, between Gabriel Kline of, &c., of the one part, and Ann Hendricks of, &c., of the second part, and George Detwiler of, &c. of the third part.    Whereas, a marriage is intended to be had and solemnized between the said Gabriel Kline and Ann Hendricks, and the said Gabriel Kline being seised and possessed of a certain dwelling-house and tract of land, which he now occupies in the said township and county aforesaid, and the said Ann Hendricks being also

[Kline's Estate.]

possessed of certain effects and property, and having made certain arrangements in regard to the enjoyment and disposition of their respective estates. Now, this indenture witnesseth, that in consideration of the said intended marriage, and for settling the interests and estates herein referred to, to the use hereinafter mentioned, and also in consideration of one dollar to him in hand paid by the said George Detwiler, the receipt, &c., he the said Gabriel Kline hath covenanted, &c., to, and with the said George Detwiler, acting as trustee for the said Ann Hendricks, that in case the said marriage shall take place, and the said Ann shall survive her said intended husband, she the said Ann Hendricks shall, from and after the decease of the said Gabriel Kline, for and during the time of her natural lifetime, have, &c., the north end of the said dwelling-house which the said Gabriel Kline now occupies only for the use of the said Ann Hendricks, as long as she remains my widow, and not to be by her or her trustee, let or rented to any other person during her natural lifetime, the north end of the said house, the kitchen on the first floor, one room and entry on the second floor, half of the garret, half the cellar and half of the garden, and water out of the well, with the privilege of all egress, ingress and regress necessary to enable her to enjoy the said easements, and also that she shall have and receive out of his estate, the sum of $40 yearly, and, every year during the term of her natural lifetime, in case she survives him, the principal to be secured in some of my real estate by my executors or administrators, and also all her household goods and kitchen furniture, and effects and property which she may be possessed of at the time of her marriage are to remain her own, in case she survives him, and if she does not survive him, then the same are to go to and be equally divided among her own heirs at law, as though she had not contracted the said marriage. And the said George Detwiler, for and in behalf of the said Ann Hendricks, with her consent, testified by her signature hereto, doth covenant and agree, that in case the said Ann shall survive her said intended husband, she shall renounce and release all right to the administration upon his estate, &c.

The sum of $800, for which the credit was taken in the administration account, is the amount retained by the administrators from which to raise the annuity of $40.

The auditor, after some preliminary statements and remarks, proceeds:—

" The only property spoken of at the time of entering into the agreement above referred to, was the dwelling-house and tract of land occupied by Gabriel Kline. This tract of land is returned, in the order of sale, as containing 38 acres; and it, together with tract No. 2, containing 7 acres, were sold by the administrators, for $3782, about half the value of the real estate which Gabriel

Kline owned at the time he entered into the marriage agreement. * * * There was no mention made at that time of Gabriel Kline owning any property real or personal excepting the house he was occupying. It therefore appears that about three-fourths of the property was concealed from Ann Hendricks on the day of the execution of the marriage contract. Besides, the only compensating consideration received by Ann Hendricks as expressed in the agreement, for her executing it, was, that she thereby reserved for herself the right to retain her own property, in case she survived her husband. This was a mere delusion. She did not obtain this privilege by virtue of the agreement. It was already her legal right independently of the agreement. It is now contended by the administrators and heirs of Gabriel Kline, that by this agreement, Ann Kline relinquished her claim to $300 out of her husband's estate allowed her by the exemption law, also to her statutory dower, being the yearly interest on about $2400, the one-third of the proceeds of the real estate of the decedent, and to about $2200 absolutely, being the one-third of the personal estate after paying the debts, &c." * * *

"It is therefore abundantly established from the above authorities, that at the time of executing the agreement in question, Gabriel Kline stood in a confidential relation towards Ann Hendricks, and that this relation imposed upon him the duty of acting with the utmost good faith towards his intended bride, and in the important contract, into which he was about to enter with her, of not concealing any material facts from her, of acting in such a manner towards her in all respects, as not to awaken any just suspicion of his obtaining an advantage over her by artifice. When he calls upon a court of equity to sustain his contract, the burthen of establishing its perfect fairness, adequacy and equity, is thrown upon him, and if he fails to establish affirmatively that he performed his whole duty, equity will treat the transaction as one of constructive fraud and set it aside. * * * Kline does not say one word about his estate; he does not honestly, openly and fairly lay before her the true state of his property, and that he means by this agreement, to keep her only during his life, and at death, to throw her upon the charities of the world," &c. * *

"True, she had the means of acquiring the necessary information. But where was that information to be found? In the bosom of her intended husband. He possessed it all. Equity and good faith enjoined upon him the duty of furnishing her, without the asking, with all the information necessary to a complete and adequate understanding of the nature of the agreement she was about executing. She was not, in violation of her womanly instincts, compelled to go out into the world to acquire information from strangers to enable her to guard against imposition from him in whom she rightfully imposed unbounded confi-

[Kline's Estate.]

dence. There was no obligation upon her to inquire into his pecuniary affairs, but on the contrary she could repose upon him with the most implicit confidence, which the relation she sustained to him naturally inspired. She put her mark to this paper in utter ignorance of her rights, by the procurement of her intended husband, through an agent whom he employed for that purpose, while he stood by concealing the knowledge he possessed and which was necessary and material for her to have, in order to appreciate the nature and importance of the agreement she was about to enter into with him; and his legal representatives now seek to obtain a gross advantage over her by this agreement. These facts surely present a strong case of constructive if not actual fraud. This ante-nuptial agreement must therefore be set aside, and the widow, Ann Kline, be restored to her full legal rights in the estate of her deceased husband under the intestate laws and to her right to $300 under the exemption laws. This credit of $800 is therefore not allowed and the exception is sustained." * *

The auditor found the balance of the personal estate to be $6136.91, of which he awarded one-third, $2045.63, to Ann Kline, the widow.

He also directed that $2414.66, one-third of the proceeds of the real estate, to be paid to the trustee of Ann Kline, to be invested by him and to pay her the interest for life, &c.

After exceptions by the administrators and heirs of the decedent, the Orphans' Court confirmed the report of the auditor. The exceptors appealed to the Supreme Court and assigned the decree of confirmation for error.

*B. M. Boyer* and *D. H. Mulvany*, for appellants.—It was not necessary that Kline should have informed his intended wife of the extent of his property: Kline v. Kline, 7 P. F. Smith 120. If the agreement was fairly entered into, mere inadequacy of consideration would not invalidate it: 2 Parsons on Contr. 519. The wife could have sued in equity in her husband's life, to set aside the agreement: Cannel v. Buckle, 2 P. Wms. 243; 2 Story's Eq. § 1368, 1519.

*C. Hunsicker* and *G. R. Fox*, for appellees, were stopped.

The opinion of the court was delivered, January 10th 1870, by SHARSWOOD, J.—The controversy between these parties was before this court in Kline v. Kline, 7 P. F. Smith 120. That was a writ of error to the Court of Common Pleas of Montgomery county on a judgment in a feigned issue directed by the Orphans' Court to try the validity of the marriage contract, dated March 21st 1850, between the decedent and Ann Hendricks, who is now his widow. That judgment was reversed, and a *venire*

[Kline's Estate.]

*facias de novo* awarded.  The present appeal is from the decree of the Orphans' Court dismissing exceptions to an auditor's report upon the administration account of Samuel Kline *et al.*, administrators of the said decedent, in which the administrators claimed to set aside and secure on real estate the sum of $800 in order to provide for the payment of the annual sum of $40 to the widow for her life, as stipulated in that contract.  That item presupposes its validity, and hence, though in a somewhat different form, we have the same question as was presented in Kline *v.* Kline.

We there held that the parties to an ante-nuptial contract were not like buyer and seller dealing at arms' length, but stood in a confidential relation calling for the exercise of the richest good faith, and while it might not be necessary to show affirmatively that there was a full disclosure of the property and circumstances of each, yet if the provision secured for the wife was unreasonably disproportionate to the means of the intended husband it raised the presumption of designed concealment and threw upon him the burden of disproof.  We have now the finding of an auditor in the court below that there was in fact such designed concealment, a finding well supported as it appears to us, by the evidence in the cause.

The whole contest in the court below in regard to the validity of the contract was evidently based upon the assumption that if it was valid it would be an effectual bar to all the rights of the widow under the intestate laws.   Upon that question we gave no opinion in Kline *v.* Kline, as it did not arise; nor does it properly arise here, though it has been urged on behalf of the appellee, that all she released was the right to administration.   This may be so.  But instead of admitting, she excepted to the item of $800 proposed to be set aside to secure the payment of her annuity under the contract.   She did this upon the ground that the entire contract was invalid; and that though she made no claim to administration and in point of fact it had been granted to others.   If she might have insisted on the true construction of the ante-nuptial contract, that she was entitled to the annuity of $40, and to her full third in the real and personal estate of the intestate besides, it is very plain that we cannot go back and unravel the proceedings in order to afford her the relief which she now appears to desire.  A party cannot in the same breath blow hot and cold, and it would be an anomalous proceeding to reverse on the motion of the appellee upon a ground not taken in the court below and entirely inconsistent therewith.

Decree affirmed, and appeal dismissed at the costs of the appellants.