## Mauk's Estate.

*Husband and wife—Antenuptial agreement.*

The parties to an antenuptial contract are not like buyers and sellers dealing at arm's length, and while it may not be necessary to show affirmatively that there was a full disclosure of the property and circumstances of each, yet if the provision secured for the wife is unreasonably disproportionate to the means of the intended husband, it raises the presumption of designed concealment, and throws upon the representatives of the husband the burden of disproof. When under such circumstances the representatives of the husband have met this burden of proof, and established by evidence that there was no concealment of any material fact on his part, the agreement must be sustained.

When passing upon the reasonableness of a provision for a wife in an antenuptial agreement, the court will consider its adequacy for her maintenance, the relationship of the parties, the known estates owned by each, and the circumstances under which the contract was executed.

In a proceeding in the orphans' court by a widow to enforce her statutory rights in her husband's estate, notwithstanding an antenuptial agreement, the evidence showed that the paper had been prepared by an attorney at the instance of the deceased, and without consultation with his intended wife. The parties came to the attorney's office together, no explanation was given by or to either of them, and no statement of any kind was made by either party as to the extent of their property. The woman at first refused to sign the contract, but after some urging by the man, and a statement by him that "he would do as he promised, would make a provision in his will," she finally signed the contract, which was immediately acknowleged before a justice of the peace. At the time the contract was executed the man was worth $11,000 and the woman $200. The only provision made by the contract for the intended wife, in case she survived her husband, was that she should have out of his estate, the sum of $600 at the expiration of six months from his death. It further appeared that the parties had lived in the same neighborhood for a number of years. *Held*, that the widow was not bound by the antenuptial contract, and was entitled to her statutory rights in her husband's estate.

Argued Oct. 29, 1901.  Appeal, No. 10, March T., 1902, by
Mary M. Lantz, from decree of O. C. Cumberland Co., over-
ruling exceptions to report of auditor in estate of Thomas
Mauk, deceased.  Before RICE, P. J., BEAVER, ORLADY,
W. W. PORTER and W. D. PORTER, JJ.  Affirmed.

Exceptions to report of E. M. Biddle, Jr., Esq., auditor.

The facts as found by the auditor are stated in the opinion
of the Superior Court.

*Error assigned* was decree dismissing exceptions to auditor's
report.

*J. W. Wetzel*, of *Wetzel & Hambleton*, with him *H. M. Zug*,
for appellant.—The contract should have been upheld.

In Tiernan v. Binns, 92 Pa. 248, the husband's estate was
valued at $25,000, and provision in contract for wife was a sum
equal to $50.00 a year during the continuance of the marriage
relation payable at his death; no disclosure of estate; no evi-
dence of fraud; the bona fides of the contract was found by
the verdict of a jury.  The contract was upheld.

In Bierer's Appeal, 92 Pa. 265, the deceased husband had
an estate of $60,000, and the contract provided for the payment
of only $5.00 at his death.  In the absence of specific or satis-
factory evidence rebutting the presumption of designed con-
cealment, the court held the provision would be manifestly un-
reasonably disproportioned to his means.  But the question of
avoiding the contract did not directly arise because the widow
had accepted a compromise and executed a release for a small
amount which was sustained.

In Ludwig's Appeal, 101 Pa. 538, the husband's estate was
valued at $14,000, and the contract provided as a consideration
for release, etc., " one dollar, a comfortable support during life,
and at death a decent Christian burial."  No disclosure of es-
tate, but effect of the contract explained by scrivener.  Held
the consideration in absence of fraud or concealment was ample
and the contract sustained.

In Smith's Appeal, 115 Pa. 322, the husband's estate was
found to be personal, $334,543.83, and real, $56,500, and at time
of making contract $129,000 and $50,000 respectively.  The

contract provided only the income of a piece of real estate on Market street assessed at $12,500, in bad repair and, taxed at $231.25 per year with a rental income of $1,200 per year. The contract was upheld, Justice PAXSON saying (page 324): "We cannot say that the provision made for her was so disproportioned to his means as to create a presumption of fraud or concealment."

In Neely's Appeal, 124 Pa. 406, the estate of husband was $129,714.07, and the provision in contract was an annuity of $600 per year for life. Under circumstances of the case, no disclosure of estate, held to be a valid contract and upheld by the court.

In Kesler's Estate, 143 Pa. 386, the estate was $134,376.96. The marriage contract put in trust $10,000 to pay to her annually $600 for life. He added to this by codicils to his will, but revoked them by a third codicil and added by said codicil an additional yearly payment of $600. The contract was set aside in the lower court, but reinstated by reversal in the Supreme Court.

*F. E. Beltzhoover*, for appellee.—The antenuptial agreement was properly set aside: Gangwere's Est., 14 Pa. 417; Kline v. Kline, 57 Pa. 120; Kline's Est., 64 Pa. 122; Bierer's App., 92 Pa. 265; Ludwig's App., 101 Pa. 535; Smith's App., 115 Pa. 319; Neely's App., 124 Pa. 406; Kesler's Est., 143 Pa. 386; Stewart's Estate, 193 Pa. 347; Orne's Estate, 192 Pa. 626; Gimber's Estate, 184 Pa. 436.

OPINION BY W. D. PORTER, J., February 14, 1902:

The only question at issue in this controversy is the validity of the antenuptial contract, dated December 5, 1895, between Thomas Mauk, Sr., and the lady to whom he was married on the 12th of the same month, and who now claims to take the interest in his estate which, in the absence of such agreement, is secured to her by law. Contracts of this character are not looked upon with disfavor by the law, but the parties to them stand in a confidential relation and the utmost good faith is required. Confidence is reposed by each in the other, and if that confidence is abused equity will grant relief against the contract. The parties to such a contract are not like buyer and

seller dealing at arms' length, and while it may not be necessary to show affirmatively that there was a full disclosure of 'the property and circumstances of each, yet if the provision secured for the wife is unreasonably disproportionate to the means of the intended husband it raises the presumption of designed concealment and throws upon the representatives of the husband the burden of disproof: Kline's Estate, 64 Pa. 122; Bierer's Appeal, 92 Pa. 265. When under such circumstances the representatives of the husband have met this burden of proof, and established by evidence that there was no concealment of any material fact on his part, the agreement must be sustained: Tiernan v. Binns, 92 Pa. 248; Ludwig's Appeal, 101 Pa. 535; Kesler's Estate, 143 Pa. 386. When passing upon the reasonableness of the provision made for the wife, we must consider its adequacy for her maintenance, the relationship of the parties, the known estates owned by each and the circumstances under which the contract is executed: Smith's Appeal, 115 Pa. 319; Neely's Appeal, 124 Pa. 406. The learned auditor in this case found the following facts: The paper had been prepared by an attorney, at the instance of Mr. Mauk, and without consultation with Miss Condry, the intended wife; the parties came to the attorney's office together, no explanation was. given by or to either of them; no statement of any kind was made by either party as to the extent of their property. Miss Condry at first refused to sign the contract, but after some urging by Mr. Mauk, and a statement by him that "he would do as he promised; would make a provision in his will," she finally signed the contract, which was immediately acknowledged before a justice of the peace. At the time the contract was executed Mr. Mauk was possessed of personal property worth a little over $5,000, and of real estate worth $6,000. Miss Condry's estate at that time consisted of a one-fifth share in real estate worth altogether between $900 and $1,000, which was subject to her mother's dower interest; so that her entire possessions amounted to less than $200. The only provision made by the contract for the intended wife, in case she survived her husband, was that she should have out of his estate the sum of $600 at the expiration of six months after his death. It is manifest that this provision was not adequate for the maintenance of the widow, without regard to the

amount of the husband's estate, and the case does not come within the principle upon which Smith's Appeal and Neely's Appeal, above cited, were ruled. The provision not being adequate for the maintenance of the widow, the question arose whether it was so disproportionate to the estate of the husband as to raise the presumption of designed concealment, and throw upon those who sought to interpose the contract as a bar to the widow's right the burden of disproof. The auditor and the learned court below were of opinion that this question must be determined in the affirmative, and that the legatees under the will must sustain the antenuptial agreement by evidence that it was fairly procured, else it must fall. We are not convinced that there was error in this conclusion. The individual estate of the intended wife was trifling in amount, and in giving up his claim upon it the prospective husband parted with very little. On the other hand his estate amounted to over $11,000, quite sufficient to enable him to make a reasonable provision for his intended wife, in case she survived him, without seriously impairing the portions of his children. The provision made by the contract would insure to the widow an income less than that given to the wife in Kline v. Kline, 57 Pa. 120, of which it was said by Mr. Justice SHARSWOOD, " Such a pittance leaves her to be an object of private charity or public relief." While the testimony of the scrivener relating to a parol promise by Mauk at the time the contract was executed was insufficient to vary the terms of the written agreement, the auditor has found as a fact that a promise was made. The manifest tendency of such a promise made at the time was to induce the intended wife to believe that the written agreement was not a matter of vital importance and to lead her to refrain from making inquiries as to the extent of her intended husband's possessions. The burden of proof was upon the representatives of the husband's estate, and it was not met. It is true that the parties had lived in the same neighborhood for a number of years, but no presumption arises that she had from neighborhood gossip acquired knowledge, approximating to correctness, of the value of the property of her intended husband: Bierer's Appeal, supra.

Decree affirmed, and appeal dismissed at costs of the appellant.