# Yost's Estate.

*Husband and wife—Antenuptial settlement—Concealment—Fraud on wife.*

Contracts of an antenuptial character are not looked upon with disfavor by the law, but the parties to them stand in a confidential relation and the utmost good faith is required. Confidence is reposed by each in the other, and if that confidence is abused, equity will grant relief against the contract. The parties to an antenuptial contract are not like buyer and seller dealing at arm's length, and while it may not be necessary to show affirmatively that there was a full disclosure of the property and circumstances of each, yet if the provision secured for the wife is unreason-

ably disproportionate to the means of the intended husband, it raises the presumption of designed concealment and throws upon the representatives of the husband the burden of disproof.

Argued Nov. 11, 1902. Appeal, No. 330, Jan. T., 1901, by Rufus R. Yost et al., from decree of O. C. Berks Co., Jan. T., 1891, No. 13, dismissing exceptions to adjudication in estate of Benneville S. Yost. Before BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Exceptions to adjudication.
The facts appear by the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*Isaac Hiester*, with him *Horace A. Yundt*, for appellant, cited: Smith v. Linn, 4 Penny. 479; Fisher v. Koontz, 110 Iowa, 498 (80 N. W. Repr. 551); Gangwere's Estate, 14 Pa. 417; Kesler's Estate, 143 Pa. 386; Smith's App., 115 Pa. 319.

*Benjamin F. Dettra*, for appellee.

OPINION BY ORLADY, J., February 11, 1903:

We held in Mauk's Estate, 19 Pa. Superior Ct. 338, that " contracts of an antenuptial character are not looked upon with disfavor by the law, but the parties to them stand in a confidential relation and the utmost good faith is required. Confidence is reposed by each in the other, and if that confidence is abused, equity will grant relief against the contract; that the parties to an antenuptial contract are not like buyer and seller dealing at arm's length, and while it may not be necessary to show affirmatively that there was a full disclosure of the property and circumstances of each, yet if the provision secured for the wife is unreasonably disproportionate to the means of the intended husband, it raises the presumption of designed concealment and throws upon the representatives of the husband the burden of disproof: Kline's Estate, 64 Pa. 122; Bierer's Appeal, 92 Pa. 265." Applying the principles announced in that case to the facts as found in the one before us on this appeal, we are constrained to affirm the decree entered by the court below. The marriage contract between

Benneville S. Yost (widower) and Clementine C. Henke (widow) bears date, November 22, 1887, when the parties were aged sixty-five and fifty-one respectively. An analysis of the testimony demonstrates beyond all question of doubt that there was but little sentiment involved in the making of this contract, and that the transaction was largely, if not entirely, one of convenience to the man, and commercial to the woman. The parties were thoroughly matured and by reason of their former experiences in the marriage state were conclusively bound to know the force and effect of such a contract. The preliminary deliberations extended over a considerable period of time. There was a keen anxiety on the part of the contracting husband to keep the matter a secret and arrange it on such terms as would be satisfactory to his adult children, so as to furnish a strong inducement to satisfy them that he was at least making a good bargain in his own and their interest. While the attack on the credibility of the witnesses, who sustained the widow's contention, is seriously affected by this record, it is to be borne in mind that these witnesses were known to Mr. Yost before he contemplated making the contract with Mrs. Henke, and some of them became important largely through his own selection. If presented as original testimony, we might be disposed to find differently from the learned judge of the court below, but he had the advantage over us in that he was nearer to them, and could verify or disprove important facts which are presented to us only in the black letter of testimony, hence he was better able to give their testimony proper weight. While the man was zealous and the woman apparently coy, the preliminary investigation resulted in an arrangement that was satisfactory to the parties, and the facts supporting that contract are required, under our decisions, to be fully and clearly disclosed. The woman in such cases places, as she of right should do, implicit trust in the truth and affection of the man in whom she is about to deposit the happiness of her future life: Kline v. Kline, 57 Pa. 120. The good faith of Benneville S. Yost was successfully assailed by satisfactory evidence. The administrators in charging themselves with $8,000 of assets which Yost had not disclosed to Mrs. Henke, practically doubled his estate, and showed a design to withhold important facts which would naturally have changed the con-

sideration provided for her in the contract. As between themselves they had power to make any character of contract they saw fit, and to be bound by it or annul it as they would decide. They had full control over the subject-matter, and the heirs of the decedent must stand or fall as to their claims on the facts established in regard to the contract. If true, as found by the court below, that he disclosed only one half of the value of his estate, the court was clearly right in concluding that it was such a concealment and misrepresentation as would void the contract. There are a number of inconsistent and contradictory facts as made by the parties themselves, which doubtless grew out of their change of mind as affected by their living together. The prompt placing on record of the marriage contract and providing for no subsequent cancelation of it, the separation, the proceedings in divorce, the reconciliation of the parties, and the provisions in the will, clearly indicate that it was a fruitful source of controversy, promise and denial.

After carefully going over all the evidence, we feel that the conclusions of fact, as found by the court below, should be sustained. The contract was one inspired by the intended husband's solicitation, which in its early stage was not at all attractive to the wife, and naturally through her confidence in him she was induced to sign it more as a subterfuge designed by her prospective husband to aid them in living more happily with his adult children. Under the terms of that contract he and his children would be largely the gainers over her statutory rights, and she was entirely dependent upon him for the truth of his declarations ; under such a state of facts the unreasonableness of the allowance for the wife is not the sole argument in favor of its cancelation. The deceit practiced upon her in the suppression of facts was highly important, and if the contract as written by themselves was understood to be a matter of mere temporary form and of no binding force or effect between them, and after serving its purpose was to be canceled, it should in fact be so considered, and the evidence warrants this finding. Her conduct subsequent to the death of her husband must be interpreted in the light of her knowledge of the facts. The administrators, unconsciously or by design, prevented her from having that full knowledge which the law assures to a widow before she is called upon to make

an election, and her declaration to claim as widow was made as promptly, under the circumstances, as she could have been expected to do it under the facts as made by those who were opposed to her interest.

Further discussion would not aid in disposing of the matter, as the whole question depends on the facts as found by the court below, and in which we concur.

The assignments of error are overruled and the judgments are affirmed.