## Mary Ann Slagle's Appeal.

Argued October 3, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*James F. Coyle,* with him *Laurence B. Hurst* and *Graham & Yost,* for appellant.—A party claiming advantage of contracts of this kind is held to strict proof of good faith, that no advantage was taken of the confidential relation, and that the arrangement was fair

and conscionable: Miskey's App., 107 Pa. 611; Warner's Est., 210 Pa. 431; Haberman's Est., 239 Pa. 10; Kreiser's App., 69 Pa. 194; Hambleton's Est., 166 Pa. 500; Clad's Est., 214 Pa. 141.

The duress need not necessarily amount to duress per minas but if it amounts to duress per amorem, the agreement will be set aside: Odenwelder's Est., 1 Pa. Superior Ct. 345.

*Ray Patton Smith*, for appellee.—A married woman may not enter into a postnuptial agreement, with full knowledge of her rights and without any fraud or coercion, and, after her husband's death, file her election to take against his will, even though she has renounced all her right, title and interest in his estate by said agreement: Fidelity T. & T. Co. v. Graham, 262 Pa. 273; Haendler's Est., 81 Pa. Superior Ct. 168; Miller v. Miller, 284 Pa. 414.

*George E. Wolfe*, for Mrs. Edith Claridge et al., appellees.

OPINION BY MR. JUSTICE SCHAFFER, November 26, 1928:

We are called on in this proceeding to pass upon the validity of a postnuptial agreement. When it was entered into appellant was 72 years old, her husband 87. She was his third wife and they had been married six years. He lived for two years after the agreement. She did not repudiate it in his lifetime, but after his death filed an election to take against his will, which the court below struck off, determining that she was bound by the agreement she had executed. Under it she received from her husband $4,000 in consideration of a full release of her right to receive any part of his estate after his death. At the time the paper was signed, and at the husband's demise, his possessions aggregated about $50,000.

The husband was totally blind and very deaf. Because of these conditions, the wife had a more than usual familiarity with his affairs. She knew the lands he owned, the securities he possessed, had access to his safe deposit box in which the latter were kept, was familiar with his income and his bank account. She accompanied him when he left home to transact business and conversed with his attorney who assisted in handling his affairs. When she signed the agreement the record indicates, and the court below has found, that she had a fair knowledge of the approximate value of her husband's estate. While she denied such knowledge, her contacts with his affairs would indicate that she must have known. The court has also found that when she executed the agreement she was fully advised of her rights and signed it of her own free will without any coercion upon her husband's part. These findings, supported as they are by testimony and by deductions fairly flowing from it, even in a case of this kind, must strongly influence the tribunal which reviews the record on appeal: Kern v. Smith, 290 Pa. 566, and the cases therein cited. While true it is that documents of the character now before us and the circumstances attending their making are closely scrutinized, and, if grossly disadvantageous to the wife, are presumptively fraudulent (Page on Contracts, section 423; 30 C. J. 644), and, where the provision for the wife is unreasonably disproportionate to the means of the husband, give rise to the presumption of designed concealment and cast upon those receiving the estate the burden of proof to show full disclosure to the wife of the value of the husband's property (Kline's Est., 64 Pa. 122; Campbell's App., 80 Pa. 298; Tiernan v. Binns, 92 Pa. 248; Bierer's Est., 92 Pa. 265; Shea's App., 121 Pa. 302; Warner's Est., 207 Pa. 580, 210 Pa. 431; Haberman's Est., 239 Pa. 10), we cannot say, in view of the testimony and the court's findings, that appellant did not have sufficient knowledge of her husband's estate, was not fully advised of her rights or was

coerced into signing the agreement. The facts of her husband's total blindness and his advanced age would go far to negative the idea of physical coercion, and the circumstance that she did not receive the entire amount to be paid to her under the agreement until some months after it was signed, and the further fact that she did not repudiate it in his lifetime, go far to satisfy the conclusion that what she did was voluntarily done.

She was called as a witness and fully testified, no objection being raised to her competency. She said the agreement was signed in their home, having been prepared and brought there by her husband's attorney after it had been talked over between them. She averred that she and her husband had been quarreling and that he had told her she would have to sign it or get out, that he had "flashed" his cane and tried to hit her. Nothing of this kind, however, occurred at the time the agreement was signed. She admitted on cross-examination that she went around with him when he was transacting business, that she had access to his safe deposit box, that she knew of the real estate he owned and of the sales he had made, of mortgages which he held, one for $14,000, of his ownership of bank stock, of the state of his bank account, and that she drew checks on it for him.

The attorney who drew the agreement testified that its terms were discussed between him, the husband and the wife before it was prepared, that he fully explained it to her and told her of its effect, that she knew substantially everything her husband possessed, that he had invested money in mortgages for the husband and that appellant had gone with him to inspect the properties, and that she took an active part in her husband's business affairs. The agreement provided that the husband should support her so long as she lived with him but should not be required to support her if she left. The evidence indicates that appellant had some thought of leaving her husband; this may have played an important part in her conclusion to take a present settlement

from him. The agreement began with a recital that "divers disputes have arisen between Christian Slagle and Mary Ann Slagle, his wife," so that it partakes somewhat of a settlement to end controversies between them. See Miller v. Miller, 284 Pa. 414.

Under all the circumstances, we are not convinced that the court below reached an improper conclusion.

The order of the court is affirmed; costs to be paid out of the decedent's estate.