## Inskipt's Estate.

Argued October 6, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*W. T. Tredway,* with him *R. B. Ivory, Jr.,* for appellant.

*Richard W. Ahlers,* for appellee.

OPINION BY MR. JUSTICE BARNES, November 23, 1936:

The principal question raised by this appeal is the validity of a postnuptial agreement. Decedent died June 11, 1934, leaving a will dated January 3, 1929, which was duly probated. His widow filed her election to take against the will on October 31, 1934. Testator's son and other parties in interest under the will thereupon petitioned the court to annul her election upon the ground that she had released all her rights in her husband's estate under the terms of a postnuptial agreement. After hearing, the court below entered a decree annulling the election. From the order dismissing her exceptions to this decree the widow has taken this appeal.

The agreement between the husband and wife bears the date of December 9, 1930, and is signed by both parties. It recites that they are possessed of separate estates, and that the husband has already settled upon his wife certain real and personal property, and by his will intends to devise to her other real estate described in the agreement. The agreement continues: ". . . each of the parties hereto does hereby release and forever discharge the estate of the other, upon the decease of the other, from all claims of dower, curtesy or other estate or interest in the estate of the other to which they may be or may become entitled by virtue of the laws of this Commonwealth. . . ." The agreement concludes with a covenant on the part of each one to accept such devise or bequest as may be contained in the will of the other, and to execute and deliver to the estate of the survivor a properly executed election to take under the will.

It appears by the testimony that decedent's attorney, a reputable member of the Pittsburgh bar, prepared the

postnuptial agreement at the husband's request. He was present at its execution by decedent and his wife, and signed it himself as a witness. He testified fully as to what took place at the time the agreement was executed. He stated that he read the agreement aloud in the presence of the husband and wife, and that she appeared to understand the purport of the paper at the time it was executed. The attorney testified that he was also the scrivener of decedent's will, which was executed by decedent in the presence of his wife, after it had been read aloud to both of them. The subscribing witnesses to the will were the wife and the attorney, who were also named therein as executors.

By the terms of his will decedent bequeathed all of his household goods and furniture to his wife. He devised to her the house and lot at 845 7th Avenue, Coraopolis, Pennsylvania, the property mentioned in the present agreement, and further provided that his wife should be permitted to occupy his home for one year after his decease, rent free. He directed that the remainder of his estate be sold and the proceeds distributed in equal shares among his four children of a prior marriage.

Decedent's estate consists of real property appraised for tax purposes at $11,130 and personal property valued at $786.85. Included therein is the value of the real estate devised to his wife by the will. On the other hand, the wife owned at decedent's death real estate appraised at $8,530, which, it is asserted, consists in greater part of property conveyed to her by her husband.

It is urged on behalf of the wife that this agreement was invalid because she executed it while she was ill and nervous, and that it was only hastily read over to her; that the circumstances under which both the agreement and will were executed amounted to compulsion and concealment on the part of her husband, and that she did not have full knowledge of the purpose of the agreement or the amount and extent of her own and her husband's estates.

The parties were married March 16th, 1905, and resided in Coraopolis, Allegheny County, until the husband's death on June 11, 1934. Both had been married previously and had children living of their prior marriages. There were no children by this marriage. The evidence shows that during their married life they looked with favor upon an arrangement whereby they should hold their separate estates free from all claims which the survivor might have therein. The agreement in question was not the first one of this nature which the parties had executed. Under date of December 9, 1926, they entered into an agreement which was identical in terms with the present one. The prior agreement followed property settlements made between the parties, the first of which was a conveyance dated December 27, 1921, by the husband to the wife, of a property in Coraopolis. It would appear that these property settlements were made in contemplation of an agreement of this character between them. It is admitted on the part of the wife that she has received and retained the real and personal property so transferred to her by her husband. From the property valuations shown in the record it is evident there was an attempt made to equalize the separate estates of the two parties.

As a result of a careful examination of the record we are unable to find any evidence which would support a finding that any fraud or coercion was practiced upon the wife, or that she signed the agreement in ignorance of her rights or of the amount and size of her husband's estate. On the contrary, in view of the testimony and the court's findings, we have no difficulty in reaching the conclusion that the wife entered into this agreement voluntarily, and that it was entirely free from fraud, concealment or overreaching.

The value of the property which the wife received under this agreement and by the terms of decedent's will was not so disproportionate to the means of the husband as to give rise to any presumption of concealment on his

410

part. To permit her to retain the property which she has received under the agreement, and to repudiate it after the husband's decease by allowing her to take against his will would be contrary to the settled decisions of this Court: *Fennell's Estate*, 207 Pa. 309; *Slagle's Appeal*, 294 Pa. 442; *Haendler's Estate*, 81 Pa. Superior Ct. 168. See also *Robinson's Estate*, 222 Pa. 113; *McCready's Estate*, 316 Pa. 246; *Estate of Harris Gorback, Deceased*, 96 Pa. Superior Ct. 527.

Appellant also complains that the court below refused to permit her to prove the circumstances under which the agreement was executed. Objection was made to her testimony under Sec. 5, Clause (e), of the Act of May 23, 1887, P. L. 158, which is the only act called to our attention and which makes incompetent as a witness the surviving party to a thing or contract in action when the other party to it is dead. The court below correctly held that under this Act the widow was not competent to testify directly to matters occurring between herself and her husband. The assignments respecting this question are wholly without merit: *Robinson's Est.*, supra; *Bowman's Est.*, 301 Pa. 337; *Ray's Est.*, 304 Pa. 421.

The decree of the court below is affirmed; costs to be paid out of the decedent's estate.