Snyder Estate.

186

Argued September 30, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Leland W. Walker,* for appellant.

*Norman A. Shaulis,* with him *Frank R. Coder,* for appellee.

OPINION BY MR. JUSTICE ARNOLD, November 9, 1953:
The question in this case is the validity of an antenuptial agreement.

On November 17, 1947, Mary Florence Sheeler and Joseph D. Snyder, the decedent, made an application for a marriage license, and on the 23rd day of November were married. Both parties were well advanced in years. This was the third marriage for the husband and the second marriage for the wife. They had a courtship of some seven or eight months prior to the marriage, and afterwards resided together in the home owned by the wife, where they lived until May, 1951, when Snyder died. His will was duly probated and under its terms the wife received nothing. She filed an election to take against the will and applied for widow's exemption. The court below, after full hearing, dismissed her petition because of an antenuptial agreement executed on November 17, 1947.

The agreement contained, inter alia, the following provisions: "Whereas, both of said Parties have been married before and have living children and natural heirs, the result of such former marriages, and mutually recognize the natural right of such children and heirs to inherit from their respective ancestors such property of which each of them may die seized as was acquired by either before their now contemplated marriage, free and clear of the marital rights given by law to surviving spouses; and Whereas, each of the said Parties hereto has made a full and frank disclosure to the other as to the property owned by them and its nature and amount and each has been advised as to their respective rights therein in the event of their marriage and in the absence of any agreement between them." Following this there was a provision that he or she should "make no claim under the intestate or other laws of this Commonwealth to any part or share of the real or personal estate of which the party first to pass away may die seized or possessed and each expressly waives and relinquishes all rights and claims

of in and to the real and personal estate of such first deceased party."

It will be observed that the agreement contains the provisions that each of the parties had made a full and frank disclosure to the other as to the property owned by them and its nature and amount, and that each party had been advised as to their respective rights in the event of their marriage.

"Ante-nuptial agreements depend for their validity upon the presence of one of two factors, namely: A reasonable provision for the wife, or in the absence of such provision, a full and fair disclosure to the wife of the husband's worth": *McClellan Estate,* 365 Pa. 401, 405, 75 A. 2d 595. See also *Flannery's Estate,* 315 Pa. 576, 580, 173 A. 363; *Emery Estate,* 362 Pa. 142, 146, 66 A. 2d 262. But where the antenuptial agreement discloses that each of said parties has made a full and frank disclosure to the other as to the property owned by them and its nature and amount, such provision is prima facie evidence that a full and fair disclosure of his worth had been made by the husband to the wife: *McClellan Estate,* supra. See also *Mc-Cready's Estate,* 316 Pa. 246, 175 A. 554.

Therefore upon the laying down of the antenuptial agreement containing such provision, the burden was then cast upon the widow to show the contrary. This she did not do.

In the course of the trial Mary Florence Snyder, the widow, was produced and sworn and an offer was made that "She is going to testify to the circumstances under which she signed this paper . . .," to which objection was made that the witness was incompetent under the Act of 1887. The court ruled: *"For the present* the objection is overruled . . ." (Italics supplied).

The widow then testified that she had not been advised what property her intended husband had, nor its value; that the agreement had been concealed by her husband after she had signed it; that she never had read it and had never seen it until it was produced after his death. The attorney for the estate then cross-examined the witness as to these matters and there was re-direct and re-cross examination.

When the court came to write its opinion it correctly determined that she was an incompetent witness, citing *Robinson's Estate*, 222 Pa. 113, 115, 116, 70 A. 966, and *Inskipt's Estate*, 324 Pa. 406, 410, 188 A. 127, and stated that it "must now disregard that inadmissible evidence from this incompetent witness." This the court did, and after disregarding this testimony, there was nothing to impeach the agreement, and the court dismissed the widow's election and her claim for family exemption.

It is argued that by reason of the cross-examination of the widow she was made a competent witness, but this is incorrect. She was not *called* for cross-examination by the estate; and the cross-examination of an incompetent witness, testifying on his own behalf under objection, is not a waiver of the objection: *Goehring's Estate*, 263 Pa. 47, 53, 54, 106 A. 60. See also *Mack's Estate*, 278 Pa. 426, 430, 123 A. 462; *Dougherty v. Allegheny County*, 370 Pa. 239, 241, 88 A. 2d 73.

Decree affirmed at the cost of the appellant.