629 A.2d 944

**Eleanor COOPER, Appellee,**

v.

**Harvey OAKES as Administrator of the Estate of James L. Cooper, Appellees.**

**Appeal of Christine RICHMOND, Karen Douthett and Sharon Braden, Appellants.**

Superior Court of Pennsylvania.

Argued Feb. 9, 1993.

Filed June 21, 1993.

Reargument Denied Aug. 30, 1993.

Timothy F. McCune, Butler, for appellants.

Dan P. Wimer, New Castle, for Eleanor Cooper, appellee.

Before KELLY, JOHNSON and HESTER, JJ.

KELLY, Judge:

In this case, we are called upon to determine the enforceability of a pre-nuptial agreement against a widowed Wife, where the only evidence that the Husband had fully and fairly disclosed to the Wife the extent of his assets and her marital rights was a statement to that effect in the pre-nuptial agreement. For the following reasons, we hold that the trial court erred in voiding the agreement. Therefore, we reverse.

The facts and procedural history of this case may be summarized as follows. On June 16, 1987, James L. Cooper ("Husband" or "decedent") entered into an ante-nuptial agreement with the woman who became his Wife, Eleanor A. O'Leary, now Eleanor A. Cooper ("Wife"). On that date, Husband was divorced and the father of three adult daughters, Sharon Braden, Karen Douthett and Christine Richmond ("daughters"). Husband and Wife were married on June 19, 1987. Husband died intestate on August 31, 1990.

During the administration of Husband's estate, Wife filed a petition to void the ante-nuptial agreement which Husband and she had signed. While the named respondent was the administrator of the estate, Harvey Oakes, Husband's three daughters intervened and filed an answer the same day, February 11, 1992.

The trial court held a hearing on March 5, 1992. Pursuant to the Dead Man's Act, 42 Pa.C.S.A. § 5930, daughters pre-

sented a motion *in limine* to prevent the introduction of evidence against the pre-nuptial agreement. The court granted the motion *in limine*. Therefore, the ante-nuptial agreement was introduced at the hearing, and there was no evidence contrary to the terms of the agreement.

The trial court granted Wife's petition and held that the ante-nuptial agreement was void. The court also denied daughters' post-trial motions. Daughters timely appealed the trial court's denial of their post-trial motions.[1] Wife has not appealed the order granting the motion *in limine*. For our review, daughters present these three questions:

I. DID THE TRIAL COURT PROPERLY GRANT THE SURVIVING SPOUSE'S PETITION TO DECLARE THE ANTENUPTIAL AGREEMENT NULL AND VOID, I.E., DID THE COURT PROPERLY APPLY THE LAW OF PENNSYLVANIA REGARDING THE EVALUATION OF ANTENUPTIAL AGREEMENTS TO THE CASE AT HAND AND PROPERLY APPLY THE LAW REGARDING BURDEN OF PROOF REQUIRED TO OVERTURN AN ANTENUPTIAL AGREEMENT REGARDING THE PRESUMPTION OF FULL AND FAIR DISCLOSURE OF THE FINANCIAL POSITION OF THE PARTIES TO AN ANTENUPTIAL AGREEMENT WHEN SAID AGREEMENT RECITES THAT FULL DISCLOSURE HAS BEEN MADE?

II. WHETHER THE SURVIVING SPOUSE MET HER BURDEN TO REBUT THE PRESUMPTION OF FULL DISCLOSURE BY CLEAR AND CONVINCING EVIDENCE?

III. WHETHER THE COURT ERRED IN HOLDING THAT THE PROPONENTS OF THE AGREEMENT HAVE TO PROVE ITS VALIDITY BY PROVING THAT THE DECEDENT MADE A

---

1. Although the record does not reveal whether judgment was entered on the order denying post-trial motions, we shall treat this appeal as one from a final order. *See Bonavitacola v. Cluver*, 422 Pa.Super. 556, 619 A.2d 1363, 1367 (1993), quoting Pa.R.A.P. 902 ("the failure to praecipe to enter judgment 'does not affect the validity of the appeal' ").

FULL AND FAIR DISCLOSURE OF HIS FINAN-
CIAL RESOURCES TO THE OTHER PARTY TO
THE AGREEMENT?

Daughters' Brief at 3.

Relying upon *Simeone v. Simeone*, 525 Pa. 392, 581 A.2d 162 (1990), daughters argue that the ante-nuptial agreement's provision that Husband and Wife had full and fair disclosure of each other's assets is *prima facie* evidence that there was full and fair disclosure. In order to rebut that evidence, daughters argue, the petitioner, as opponent of the agreement, had the burden of presenting evidence that full and fair disclosure was not made. As the trial court precluded Wife, the petitioner, from testifying against the ante-nuptial agreement, daughters maintain that there was no evidence of record to rebut the agreement. Therefore, daughters conclude that the trial court erred in placing the burden upon them to demonstrate, with evidence beyond the agreement itself, that Husband fully and fairly disclosed the extent of his assets.

Wife relies on the trial court's analysis, which explained: As stated in the May 1 Opinion the Dead Man[']s Act sealed the lips of the widow. The sole evidence of full and fair disclosure were the bare assertions of the prenuptial agreement that there had been a full and complete disclosure. There is nothing in the agreement to establish what was disclosed to either party. As between the parties the contract had been valid and enforceable under the procedural rules with a presumption of full disclosure and the requirement of clear and convincing evidence to rebut the presumption. (see *Simeone v. Simeone*, 535 [525] Pa. 392 (1992) [1990] 581 A.2d 162 [sic] ).

In the case before us with one party deceased and the sole evidence being a contract containing representations/conclusions but no facts the presumption of full disclosure is considered rebutted. A contrary result because of the Dead Man[']s Act would be unfair to the Petitioner (widow).

Trial Court Opinion, June 24, 1992 at 2. Further, Wife distinguishes *Simeone v. Simeone, supra*, stating that the

instant case does not involve the claim of alimony *pendente lite,* as the *Simeone* case did. Wife's Brief at 3–4. Wife further argues that the ante-nuptial agreement does not constitute *prima facie* evidence of a full and fair disclosure of Husband's and Wife's individual assets because it did not include a schedule of those assets. Therefore, Wife maintains that the daughters failed to establish the validity of the ante-nuptial agreement. Wife concludes that the trial court properly granted her petition to void the ante-nuptial agreement.

The eminent authority on the validity of ante-nuptial agreements is the Pennsylvania Supreme Court case of *Simeone v. Simeone,* 525 Pa. 392, 581 A.2d 162 (1990). In *Simeone,* our Supreme Court narrowed the earlier plurality decision of *Estate of Geyer,* 516 Pa. 492, 533 A.2d 423 (1987). The court explained:

Further, *Geyer* and its predecessors embodied substantial departures from traditional rules of contract law, to the extent that they allowed consideration of the knowledge of the contracting parties and reasonableness of their bargain as factors governing whether to uphold an agreement. Traditional principles of contract law provide perfectly adequate remedies where contracts are procured through fraud, misrepresentation, or duress. Consideration of other factors, such as the knowledge of the parties and the reasonableness of their bargain, is inappropriate. *See Geyer,* 516 Pa. at 516–17, 533 A.2d at 434–35 (Flaherty, J. dissenting). Prenuptial agreements are contracts, and, as such, should be evaluated under the same criteria as are applicable to other types of contracts. *See Geyer,* 516 Pa. at 508, 533 A.2d at 431 ("These agreements are nothing more than contracts and should be treated as such." (Nix, C.J. dissenting)). Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements.

Contracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains. *See Standard Venetian Blind Co. v. American Empire Insur-*

*ance Co.,* 503 Pa. 300, 305, 469 A.2d 563, 566 (1983) (failure to read a contract does not warrant avoidance or nullification of its provisions); *Estate of Brant,* 463 Pa. 230, 235, 344 A.2d 806, 809 (1975); *Bollinger v. Central Pennsylvania Quarry Stripping & Construction Co.,* 425 Pa. 430, 432, 229 A.2d 741, 742 (1967) ("Once a person enters into a written agreement he builds around himself a stone wall, from which he cannot escape by merely asserting he had not understood what he was signing."); *Montgomery v. Levy,* 406 Pa. 547, 550, 177 A.2d 448, 450 (1962) (one is legally bound to know the terms of the contract entered). Based upon these principles, the terms of the present prenuptial agreement must be regarded as binding, without regard to whether the terms were fully understood by appellant. *Ignorantia non excusat.*

*Id.* 525 Pa. at 399–400, 581 A.2d at 165–66.

Nonetheless, the court in *Simeone v. Simeone* emphasized that it did not abrogate the requirement of full and fair disclosure in ante-nuptial agreements.

> In discarding the approach of *Geyer* that permitted examination of the reasonableness of prenuptial agreements and allowed inquires into whether parties had attained informed understandings of the rights they were surrendering, we do not depart from the long standing principles that a full and fair disclosure of the financial positions of the parties is required. Absent this disclosure, a material misrepresentation in the inducement for entering a prenuptial agreement may be asserted. [*In re Estate of Hillegass,* 431 Pa. 144, 152–53, 244 A.2d 672, 676–77 (1968).] Parties to these agreements do not quite deal at arm's length, but rather at the time the contract is entered into stand in a relation of mutual confidence and trust that calls for disclosure of their financial resources. *Id.* at 149, 244 A.2d at 675; *Gelb Estate,* 425 Pa. 117, 120, 228 A.2d 367, 369 (1967). It is well settled that this disclosure need not be exact, so long as it is "full and fair." *Kaufmann Estate,* 404 Pa. 131, 136 n. 8, 171 A.2d 48, 51 n. 8 (1961). In essence therefore, the duty of

disclosure under these circumstances is consistent with traditional principles of contract law.

*Id.* 525 Pa. at 402–03, 581 A.2d at 166–67. The court then reiterated the presumptions and burdens with regard to the validity of ante-nuptial agreements.

If an agreement provides that full disclosure has been made, a presumption of full disclosure arises. If a spouse attempts to rebut this presumption through an assertion of fraud or misrepresentation then this presumption can be rebutted if it is proven by clear and convincing evidence. *Hillegass,* 431 Pa. at 152–53, 244 A.2d at 676–77.

*Id.* 525 Pa. at 403, 581 at 167.

The court next explained that the agreement therein recited that the husband and wife had made full and fair disclosure. In that case, the agreement also included a list of the husband's assets. The court reviewed the record and found support for the fact finder's conclusion that the wife failed to prove that the list of assets understated the actual value of the husband's assets. While the Supreme Court evaluated the list of assets, it did not hold that a scheduling of assets was required for a presumption of full disclosure. To so hold would require at least mention of, if not the express overruling of, established Pennsylvania Supreme Court precedent.

In *In re Snyder's Estate,* 375 Pa. 185, 100 A.2d 67 (1953), a unanimous Pennsylvania Supreme Court reasoned:

[W]here the antenuptial agreement discloses that each of said parties has made a full and frank disclosure to the other as to the property owned by them and its nature and amount, such provision is prima facie evidence that a full and fair disclosure of his worth had been made. by the husband to the wife: *McClellan's Estate,* [365 Pa. 401, 75 A.2d 595 (1950)]. *See also In re McCready's Estate,* 316 Pa. 246, 175 A. 554 [(1934)].

Therefore upon the laying down of the antenuptial agreement containing such provision, the burden was then cast upon the widow to show the contrary. This she did not do.

*Id.,* 375 Pa. at 188, 100 A.2d at 68–69.[2]   Relying upon the Act of 1887, 28 P.S. § 322,[3] the Court in *In re Snyder's Estate* held that the widow was unable to challenge the validity of the antenuptial agreement which provided that each had made a full and frank disclosure to the other about the property each owned and about the rights they would have had in the absence of the agreement. *Id.* at 188, 100 A.2d at 69. The Act precluded a surviving party to an agreement from testifying against the agreement when the other party to it was dead. *See id.* at 189, 100 A.2d at 69, citing *In re Inskipt's Estate,* 324 Pa. 406, 188 A. 127 (1936) and *In re Robinson's Estate,* 222 Pa. 113, 70 A. 966 (1908) (trial court correctly determined that widow was an incompetent witness). The Court did not discuss any requirement of a listing of assets and certainly did not rely upon one.

The holding of *In re Snyder's Estate* means that an antenuptial agreement is presumed valid if it provides that the future Husband and Wife have fully disclosed to one another the extent of their assets and the extent of possible marital rights in the absence of the agreement. *See also Simeone v. Simeone, supra* 525 Pa. at 403, 581 A.2d at 167 ("If an agreement provides that full disclosure has been made, a presumption of full disclosure arises."); *Karkaria v. Karkaria,* 405 Pa.Super. 176, 188–89, 592 A.2d 64, 71 (1991), quoting *In re Estate of Geyer, supra* 516 Pa. at 506, 533 A.2d at 429 ("Such disclosure must include both the general financial pictures of the parties involved, and evidence that the parties are aware of the statutory rights which they are relinquishing."); *Adams v. Adams,* 414 Pa.Super. 634, 607 A.2d 1116

**2.** In *McClellan's Estate, supra,* the Supreme Court explained that the provision in the agreement which stated that full disclosure had been made was *prima facie* evidence of full and fair disclosure. However, a detailed statement that was appended to the agreement revealed that the Husband had materially misrepresented the value of his property. Therefore, the presumption of full and fair disclosure which the provision had created was overcome by the detailed schedule of assets and their false values.

**3.** The current version of the Dead Man's Act, 42 Pa.C.S.A. § 5930 is "substantially a reenactment of … 23 P.S. § 322." *See* 42 Pa.C.S.A. § 5930 (Historical Notice, Official Source Note).

(1992) (interpreting post-nuptial agreement under same principles of interpretation of ante-nuptial agreements; where agreement clearly mentions wife's statutory rights, she was shown to be aware of those rights). None of these cases *require* that the agreement include a schedule of assets or list of marital rights. The statement of full and fair disclosure constitutes *prima facie* evidence of full and fair disclosure. The proponent of avoiding the agreement then bears the *burden of proving* an asserted fraud, misrepresentation or duress by clear and convincing evidence. *Simeone, supra.*

In the case at bar, the parties entered into an agreement which provided, in relevant part:

\* \* \* \* \* \*

WHEREAS, the parties to this **AGREEMENT** intend and desire to define certain property or property rights which each brings to the marriage, to the end that such property or property rights will be designated and set apart as the sole and separate property of the respective party; and,

WHEREAS, both parties to this **AGREEMENT** have made to each other a full and complete disclosure of the nature, extent, and probable value of all their respective property, estate, and expectancy; and,

\* \* \* \* \* \*

WHEREAS, the parties to this **AGREEMENT** desire to waive all rights and privileges that either of them might have as the surviving spouse of the other to take or share in any of the real or personal property of a deceased party hereto or in any of the real or personal property of the other spouse in the event of separation, living apart, divorce or annulment; now

THEREFORE, for and in consideration of the mutual covenants herein contained, the parties to this **AGREEMENT** do hereby expressly agree and stipulate as follows; to wit:

\* \* \* \* \* \*

H. This **AGREEMENT** has been entered into by the parties hereto, will full knowledge on the part of each to the extent and probable value of all the assets and estate of the other and of all the rights that, but for this **AGREEMENT,** would be conferred by law, upon each of them in the assets or estate of the other by virtue of the consummation of the proposed marriage.

\*    \*    \*    \*    \*    \*

Ante-nuptial Agreement, June 16, 1987 at 1, 2, 4.

This antenuptial agreement is presumptively valid because it states that each party made full disclosure to the other. Therefore, Wife bore the burden of proving, pursuant to a theory of duress, misrepresentation, or fraud, and with clear and convincing evidence, that the ante-nuptial agreement was invalid. She did not carry her burden.

The trial court recognized the validity of the agreement, but held that *Simeone v. Simeone* did not apply in an estate proceeding. Thus, the trial court placed upon daughters a burden of proving, with evidence beyond the face of the ante-nuptial agreement, that Husband had fully and fairly disclosed to Wife his assets and her rights at law. As the case in *In re Snyder's Estate* involved a widow attempting to void an ante-nuptial agreement, that Pennsylvania Supreme Court case is controlling precedent on this precise issue.[4] Therefore, the trial court erred in voiding the antenuptial agreement and in placing the burden of proof on daughters instead of on Wife, the opponent of enforcing the agreement. We reverse the trial court's order.

Order reversed.

4. *See also Karkaria v. Karkaria, supra* 405 Pa.Super. at 185, 592 A.2d at 69 ("The Divorce Code's policy of promoting economic equity and protecting financially dependent spouses in the context of a marital dissolution is virtually indistinguishable from that underlying the statutory right of a surviving spouse to elect against the decedent's will.").