The facts are stated in the opinion of the court below, by RICHARDS, P. J., as follows:
Annie M. Williard Holwig died on Oct. 15, 1942. She was survived by a husband, Harry F. Holwig. She had a will which was dated Aug. 2, 1937. Both parties had been married before and the will was executed by the decedent before her marriage to Mr. Holwig, which occurred on Feb. 15, 1938. The will made no provision for the surviving husband. In due course the executor filed his account. Then the husband filed exceptions contending that he was entitled to his intestate share because the will was revoked as to him, and that the antenuptial agreement which had been executed by the parties was ineffective to prevent him from taking under the Intestate Act. It was further alleged that the decedent had misrepresented and concealed her financial status and that the exceptant did not learn the true extent thereof until after her death. Testimony was taken and the case duly argued. *Page 72 
 Discussion.
Section 21 of the Wills Act of 1917, P. L. 403, as amended, 20 PS 273, provided as follows:
"When any person, male or female, shall make a last will and testament, and afterward shall marry, or shall have a child or children, either by birth or by adoption, not provided for in such will, and shall die leaving a surviving spouse and such child or children, or either a surviving spouse or such child or children, although such child or children be born after the death of their father, every such person, so far as shall regard the surviving spouse or child or children born or adopted after the making of the will, shall be deemed and construed to die intestate; and such surviving spouse, child, or children shall be entitled to such purparts, shares, and dividends of the estate, real and personal, of the deceased, as if such person had actually died without any will."
This section bears a close resemblance to Section 15, of the Act of 1833, P. L. 249. But Section 16 of the Act of 1833, which provided, "That a will executed by a single woman shall be deemed revoked by her subsequent marriage . . ." is not embodied in the Act of 1917. The Act of 1833 was repealed by Section 27 of the Act of 1917. There is, consequently, no provision of the law that the will of a single woman is revoked by her subsequent marriage.
Since this is not a case where the will left something to the intended husband, we are not obliged to consider his right to elect to take under the will or under the Intestate Act;Fidelity Trust Co.'s Appeal, 121 Pa. 1, 17. The surviving husband here is entitled to take what the Intestate Act gives him unless prevented by the antenuptial agreement. This agreement reads as follows:
"This Agreement, made this Seventh day of February, A.D., One thousand nine hundred and thirty-eight, between Annie M. Williard, of the borough of Lykens, county of Dauphin and state of Pennsylvania herein called the 'First Party', and Harry Holwig of the township of Wiconisco, county and state aforesaid herein called the 'Second Party', Witnesseth: *Page 73 
"Whereas, a marriage is contemplated between the parties hereto, and the First Party has fully informed the Second Party of her financial situation, including the amount of both real and personal property owned by the First Party; and
"Whereas, the parties hereto desire that either of them shall not be responsible for the debts of the other, which might have accumulated up to the time of signing of this agreement, nor for any debts contracted hereafter unless both parties are agreeable to assume the same;
"Now, therefore, it is hereby mutually agreed, as follows:
"1. That the First Party might dispose of any and all property, both real and personal, as she might see fit at the time of her death or otherwise, the Second Party hereby agrees to accept only such portion of her estate as the First Party might devise unto the Second Party by will or codicil to the same, regardless of any and all Acts of the Pennsylvania Legislature now enacted or any laws which might be enacted hereafter.
"2. That the Second Party might dispose of any and all property, both real and personal, as he might see fit at the time of his death or otherwise, and the First Party hereby agrees to accept only such portion of his estate as the Second Party might devise unto the First Party by will or codicil to the same, regardless of any and all Acts of the Pennsylvania Legislature now enacted or any laws which might be enacted hereafter.
"3. That this agreement shall become effective only in the event that the contemplated marriage between the parties hereto shall be solemnized.
"In witness whereof, the parties have hereunto set their hands and seals, the day and year first above written.
 Annie M. Williard (Seal) Harry F. Holwig (Seal)
Witnesses:
 Ella R. Finton. Malvin I. Finton." *Page 74 
Regardless of what the law may be in other jurisdictions, we are satisfied that this agreement estops the exceptant from taking under the Intestate Act, unless it was procured under circumstances indicating fraud. The Supreme Court of this State has consistently held that equitable principles will be applied to effectuate the intentions of the parties as evidenced by their ante-nuptial agreements, written or oral, when there is no fraud or over-reaching. This is shown by such cases asGackenbach v. Brouse, 4 W. S. 546; Lant's Appeal, 95 Pa. 279;Craft's Estate, 164 Pa. 520; Krug's Estate, 196 Pa. 484; andMcCready's Estate, 316 Pa. 246. Others could be cited.
The testimony clearly reveals that the exceptant "wanted to show her he was marrying her and not just for her money"; T. 7. The decedent, in effect, said that if he was only marrying her for her money they were not going to be married; T. 6. The agreement was read by both parties before it was signed. It states that "the First Party has fully informed the Second Party of her financial situation, including the amount of both real and personal property owned by the First Party". Notwithstanding this clear declaration the exceptant testified that he did not know the value of the decedent's estate and she did not tell him. This testimony was objected to and we reserved decision thereon. We hold that it is inadmissible. This is clearly ruled by Bowman's Estate, 301 Pa. 337, 341,342. It was there held, under circumstances quite similar to those here existing, that a surviving spouse was incompetent to testify under the Act of 1887, and was competent under the Act of 1891 only "if such matter occurred between the party himself and a person who is living and who testifies against him at the trial . . ." This latter requirement is not met in the present case.
It is significant that the exceptant makes no claim that he did not understand the import of the agreement. He nowhere states that he was deceived thereby. There *Page 75 
is a presumption that there was no concealment or imposition. It is not necessary that there be exact knowledge of the worth of the other contracting party. See McCready's Estate, 316 Pa. 246,255.
We can see nothing in the record of this case to indicate even the slightest fraud, misrepresentation, concealment or over-reaching. The exceptant produced no evidence thereof whatever. We think he knew exactly what he was doing and the effect thereof. The agreement was bilateral. Each agreed to accept what the other gave by will or codicil. Neither was bound to give anything. Both waived rights under present or future laws. The statement with reference to each others debts we deem to be unimportant. It may give a reason for what they did but it did not alter their agreement. There is no verbal testimony which in any way tends to impugn the written agreement. On the contrary, it tends to strengthen it. Considering the whole of the testimony we are thoroughly convinced that the agreement was freely entered into without the slightest hint of fraud, deception or concealment, and that the agreement accurately reflects the true intentions of the parties. Under these circumstances, the exceptant is estopped from claiming any share of the decedent's estate under the Intestate Act.
Exceptant, husband of decedent, appealed.
The decree of the Court below is affirmed on the opinion of President Judge RICHARDS.
Costs to be paid by the appellant. *Page 76