## Emery Estate.

Argued April 14, 1949.  Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Jones, JJ.

*F. J. Woods,* with him *James C. Bly,* for appellant.

*William B. Paul,* with him *James D. Wills, W. D. Gallup, F. D. Gallup, J. J. McDowell, T. L. McDowell, Paul, Lawrence & Wills, Gallup, Potter & Gallup* and *McDowell & McDowell,* for appellees.

OPINION BY MR. JUSTICE PATTERSON, May 23, 1949:

This is an appeal from a decree of the Orphans' Court of McKean County sustaining an antenuptial agreement entered into by Earle C. Emery, deceased, and Mildred S. Emery, appellant, and denying appellant's petition to appoint appraisers to set aside property to the value of $5,000 under section 2 of the Intestate Act of 1917, P. L. 429, 20 PS 11 et seq.

On October 4, 1946, decedent, a man of considerable means and prominent resident of Bradford, Pennsylvania, entered into an antenuptial agreement with appellant whereby she agreed to accept the sum of $50,000 in bonds and securities, receipt of which was acknowledged, "in lieu of any and all of her rights in and to the real and personal property of [decedent] now owned or hereafter acquired including any and all dower or statutory rights, rights as widow and rights as heir of any kind." Thereafter, on October 17, 1946, decedent and appellant were married at Brunswick, Georgia. Decedent was a widower seventy years of age at the time of the marriage, and appellant, beauty shop operator and former waitress, was a widow thirty-nine years of age. Following the marriage the parties proceeded to decedent's winter home at Clearwater, Florida, where they lived together as husband and wife until October 31, 1946, a period of fourteen days, on which date decedent suddenly died.

Having deposited with his attorneys prior to the marriage, for further instructions, $50,000 of United

States Treasury bonds, decedent, on arrival at Clearwater, on October 18, 1946, telegraphed instructions that the bonds be transferred to appellant's name in accordance with the antenuptial agreement. The bonds were forwarded to the Federal Reserve Bank of Philadelphia for transfer on October 25, 1946, through Citizens National Bank of Bradford, but due to an omission to provide the prefix to the name of the assignee, the transfer was not completed until after decedent's death, and the exchange bonds in appellant's name were not shipped until November 13, 1946. In the meantime, on November 12, 1946, Citizens National Bank of Bradford advised appellant by letter that the bonds would be delivered to her upon receipt, in reply to which the bank received a letter from appellant's attorney, dated November 14, 1946, advising that she would not accept the bonds and taking the position that the antenuptial agreement was not binding upon her.

Decedent's personal estate was appraised at $1,281,-570.04, not including the $50,000 of bonds transferred to appellant's name. In addition, he died owning real estate which he carried on his books at a figure of $150,-000. By his will, dated March 9, 1945, decedent gave his estate to Citizens National Bank of Bradford, as trustee for Lottie M. Jones, and to his two nieces and nearest relatives, Elizabeth Emery Fesenmyer and Lena Melvin Conklin, appellees.

Appellant contended, unsuccessfully, in the court below, and here contends that the antenuptial agreement is invalid and, therefore, there is an intestacy as to her, since decedent's will was executed prior to their marriage. It is argued that the antenuptial agreement does not bind appellant on the grounds that (1) decedent did not make a full and fair disclosure of the nature and extent of his property, (2) the financial provision made for her in the agreement was dispro-

portionate to decedent's net worth, and (3) the securities were not delivered prior to decedent's death.

As said in *Flannery's Estate,* 315 Pa. 576, 580, 173 A. 303, "For their validity antenuptial contracts depend upon the presence of one of two factors: A reasonable provision for the wife, or, in the absence of such provision, a full and fair disclosure to the wife of the husband's worth." See also *Groff's Estate,* 341 Pa. 105, 112, 19 A. 2d 107; *Gorback's Estate,* 96 Pa. Superior Ct. 527, 529. Here, as held by the court below, it cannot be affirmed that either factor is absent.

Disclosure by the decedent of the exact value of his property was not necessary: *McCready's Estate,* 316 Pa. 246, 253, 175 A. 554; *Holwig Estate,* 348 Pa. 71, 74, 33 A. 2d 915. While appellant may not have known of exactly what decedent's estate consisted, she knew that he was a man of large means. In the preamble of the antenuptial agreement it is recited that the decedent is "the owner of both real and personal property having a value at the present time of one million one hundred thousand ($1,100,000.00) dollars." This figure was based on the annual report of a reputable firm of independent certified public accountants, regularly employed by the decedent, computing his net worth as of December 31, 1945, at $1,112,619.64, and was recited in the preamble on the advice of counsel. The agreement was handed to the appellant by decedent on October 3, 1946, and remained in her sole possession until she returned it duly executed and witnessed the following night. She had ample opportunity to obtain information as to the exact nature and extent of decedent's estate and the effect of the agreement, if she so desired. As stated by the chancellor, "This was not a child marriage. Mildred Showers, although much younger than Earle C. Emery, was a mature woman, thirty-nine years of age, had been once married, had

several years of business experience. There is nothing to indicate that she did not possess at least the average degree of knowledge of the world and keenness of a woman of her age. She surely possessed intelligence enough to know that she had a right to refuse to sign the contract if it was not satisfactory to her." The preamble also recited that "first party [decedent] has fully informed second party [appellant] of his financial situation and wealth," and in the last paragraph of the agreement it is stated that, "The parties hereto do hereby declare that they have carefully read this agreement and have discussed the legal effect thereof and further that a full disclosure of the properties of each party has been made to the other." These solemn admissions of appellant, appearing in the agreement, are affirmative proof that she was not deceived: *McCready's Estate*, supra, 252; *Smith's Appeal*, 115 Pa. 319, 321, 8 A. 582.

Since the very purpose of antenuptial contracts is to change the provision the law makes for the intended wife (*Groff's Estate*, supra, 110), percentages are of little value in determining the adequacy of the consideration in cases of this character. The test of the reasonableness of the provision for the wife is not whether she would receive as much as she would be legally entitled to receive in the absence of the antenuptial agreement, but whether the provision for her is sufficient to enable her to live comfortably after the husband's death, in substantially the same way as she lived prior to the marriage, considering all the circumstances: *Clark's Estate*, 303 Pa. 538, 543, 154 A. 919; *McCready's Estate*, supra, 255; *Groff's Estate*, supra, 110. Appellant was a waitress from 1929 until 1939, when she began the business of operating a beauty shop, in which business she was engaged at the time of her marriage to decedent, realizing therefrom a net income of approximately $1500

a year. Her total net worth at the time, according to the evidence, was $5,000. As beneficiary of a policy of insurance on the life of decedent, she has received the sum of $9,000, and so far as the record discloses her earning capacity is unimpaired. In the light of these facts, the provision for her cannot be considered unreasonable. Payment to her of the $50,000 under the agreement will obviously improve her financial position as compared to her situation prior to her marriage to decedent of two weeks' duration.

Having signed the agreement containing an acknowledgment of the receipt of the specified consideration, appellant cannot now deny such receipt for the purpose of defeating the operation of the contract. The rule that a receipt is only prima facie evidence of payment, and may be explained by parol, does not apply when the question involved is not as to the fact of payment but as to the existence of rights springing out of the contract. See *Real Estate Company of Pittsburgh v. Rudolph*, 301 Pa. 502, 506, 153 A. 438; *Eaton v. New York Life Insurance Company*, 315 Pa. 68, 81, 172 A. 121. The rule is well stated in Restatement, Contracts, section 243, as follows: "Where by the terms of an integration a certain fact is essential to the creation or continuance of an obligation and it is, to the knowledge of the obligor, falsely recited in the integration that the fact exists, the integrated agreement is not deprived of legal operation unless the existence of the fact is made essential by law independently of any agreement requiring it." Knowing the meaning of the words in the agreement, appellant nonetheless signed and delivered it, and on the faith of her so doing decedent married her. Now that he is dead, she cannot be heard to contend that the agreement is inoperative as a waiver of her right to set aside his testamentary provisions.

Decree affirmed at appellant's cost.