## Harris Estate.

294

Argued January 12, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Walter Phipps, Jr.,* for appellant.

*Roland J. Christy,* for appellees.

OPINION BY MR. CHIEF JUSTICE BELL, August 6, 1968:

On April 21, 1959, the deceased and her husband, who is the present appellant, went to see Malcolm

Campbell, Esq., for the purpose of entering into a written antenuptial agreement. This was eighteen days prior to their intended marriage. At that time appellant was 76 years of age and the deceased 66, each having an adult child by a former marriage. They executed an antenuptial agreement which was prepared by Campbell. This agreement provides:

"AGREEMENT made this 21st day of April, A.D. 1959 between ABEL K. HARRIS and IDA C. MYERS, both of Montgomery County, Pennsylvania:

"WHEREAS ABEL K. HARRIS and IDA C. MYERS [parties] to this agreement intend to be married in the immediate future, and

"WHEREAS each of the parties owns individually real and personal property, *the nature and extent of* the holdings of each party having been disclosed to the other,* and

"WHEREAS the parties desire that all property now owned or hereafter acquired by each of them shall, for testamentary disposition and intestate distribution, be free of any claim or distributive share of the other that may arise by reason of their contemplated marriage,

"Now, THEREFORE, in consideration of the contemplated marriage of the mutual promises hereinafter made, and intending to be legally bound under the Uniform Obligations Act of the Commonwealth of Pennsylvania,

"IT IS AGREED THAT:

. . .

"2. Each of the parties waives and releases any rights as surviving spouse to elect to take against the other's will, whether heretofore or hereafter made, and each of the parties waives and releases any rights as surviving spouse to participate in any intestate share

---

* Italics throughout, ours.

that he or she otherwise might become entitled due to a full or partial intestacy under the laws of the Commonwealth of Pennsylvania or similar laws of any other jurisdiction which may be applicable.

"3. This agreement shall not be construed as releasing any claim or right which either of the parties might have against the estate of the other due to testamentary clauses now or hereafter that might be made for the surviving spouse.

. . .

"7. The foregoing agreement contains the entire agreement and there are no other understandings or agreements, either written or oral, between them concerning the aforesaid.

"IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day and year first above written.

"(s) ABEL K. HARRIS

(s) IDA C. MYERS

"Signed, sealed and delivered in the presence of:

(s) MALCOLM CAMPBELL

(s) SARA D. HERITAGE."

There was no financial provision in this antenuptial agreement for either party,* nor did the deceased wife leave her husband anything in her will. The parties lived together in harmony from their marriage on

---

* It is the belief of the writer of this Opinion that nearly every claimant who has entered into an antenuptial agreement labors under the delusion that in this sordid, money-mad world in which we are living, nobody marries for anything except money, and an agreement reciting full disclosure of an intended spouse's wealth and a complete release by the intended spouse is merely a scrap of paper. Contrary to such belief, love is not obsolete, especially among the young. Parties to an antenuptial agreement and release seem to forget that the elderly marry, in most cases, for comfort and companionship and affection (and occasionally for love), instead of solely for financial gain.

May 9, 1959 until the wife's death on September 22, 1966.

On October 21, 1966, appellant filed an election to take against his wife's will, in spite of his covenant not to do so. Upon a petition to show cause why the election should not be vacated, the Orphans' Court, after a hearing, struck off the election, because of the above-recited antenuptial agreement. From the Order of the Orphans' Court, the husband took this appeal.

The law with respect to antenuptial agreements has been so recently reviewed and restated in *Hillegass Estate,* 431 Pa. 144, 244 A. 2d 672, that it will suffice if we merely restate that part which is most *pertinent* to this case. The antenuptial agreement is presumptively valid and binding upon both parties, and since the surviving husband contended that he entered into the agreement because of misrepresentations of her property by his intended wife, the burden to prove material nondisclosure and thus overcome the presumption of validity and full and fair disclosure was upon the surviving husband.

Prior to the *April 21, 1959* antenuptial agreement, deceased had consulted her then counsel, Roland J. Christy, and he prepared for her an antenuptial agreement to which was appended a schedule of her assets, which included $87,000 in securities. This antenuptial agreement was never executed, but a copy of it, *without the schedule attached,* was taken by the deceased to the April 21, 1959 meeting with her intended husband at Campbell's office. The antenuptial agreement which the parties executed on April 21, 1959 is substantially identical with that drawn for the deceased by her counsel, Roland J. Christy, except that a provision in the Christy-drawn agreement providing for waiver of the defense of nondisclosure was omitted from the agreement executed by the parties.

Appellant-husband was represented at the April 21, 1959 meeting by Campbell, although he did not represent appellant in these proceedings. Campbell was permitted to testify as to exactly what happened at the two meetings which the parties held at his office, the latter being the meeting on April 21, 1959, when the antenuptial agreement was executed. Appellee contends, based on the Dead Man's Act, P. L. 158 (1887), 28 P.S. §322, that Campbell was not a competent witness. There is no merit in this contention; the authorities hold that the scrivener of an antenuptial agreement is permitted to testify for or against the estate as to transactions which occurred with the decedent unless *the scrivener's interest,* as distinguished from his testimony, is adverse to the decedent's estate: *Gelb Estate,* 425 Pa. 117, 228 A. 2d 367. See, also, *Commonwealth Trust Co. v. Szabo,* 391 Pa. 272, 281-282, 138 A. 2d 85, 89; *Gaston Estate,* 361 Pa. 105, 62 A. 2d 904; *Dillon's Estate,* 269 Pa. 234, 111 Atl. 919. Attorney Campbell's evidence, therefore, was admissible on the subject of disclosure and everything else that occurred at these meetings.

Campbell testified that at the earlier meeting the deceased, unaccompanied by counsel, would not respond to his questions concerning her worth. Appellant on that occasion stated that he "had a house plus $7,000 or $8,000 in a savings account." Campbell testified that he impressed upon the deceased the importance of a full disclosure of her property and suggested that she bring a schedule of her assets with her to the April 21st meeting.

Campbell further testified that on April 21 he again advised the parties of the importance of disclosure by each of them, and again questioned both of them concerning their assets. Appellant stated that his total assets amounted to $20,000, and his intended wife then responded that she was worth "about twice that

much." This was a gross falsehood. Appellant's assets were as he represented, but deceased had property on April 21, 1959 totalling $137,182, and she knew that her securities at that time were worth $87,000.* The antenuptial agreement was then executed.

When a claimant has proved that material misrepresentations were made it is presumed that the contract was entered into in reliance upon these misrepresentations, and the burden to prove otherwise is upon the decedent's estate: *Hillegass Estate,* 431 Pa., supra; *Gelb Estate,* 425 Pa., supra; *McClellan Estate,* 365 Pa. 401, 75 A. 2d 595. This burden the estate of the decedent failed to meet. In view of the misrepresentations of her wealth by the decedent, claimant husband could elect to take against his wife's will.

Order reversed, costs to be paid by the Estate of Ida Myers Harris.

Mr. Justice COHEN concurs in the result.

---

* We further note, although it is of no importance in this case, that (1) appellant had access to joint tax returns and other information which would have revealed his wife's worth, and (2) throughout their married life Campbell served as counsel for both spouses.