359 A.2d 431

**Rita L. McGANNON, Appellant,**

**v.**

**George McGANNON.**

Superior Court of Pennsylvania.

June 28, 1976.

John L. Bailey, Edwin J. Martin, Pittsburgh, for appellant.

James D. Morton, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, for appellee.

PRICE, Judge.

On July 23, 1974, appellant Rita L. McGannon filed a complaint for support pursuant to The Pennsylvania Civil Procedural Support Law [1] against the appellee, her husband George McGannon. An answer was subsequently filed and a special hearing date of August 21, 1974 was set. On that date, appellant and her counsel appeared before the hearing court. Appellee and his counsel were not present, apparently due to some confusion as to the date of the hearing, but appellee was represented by another attorney from his counsel's firm. The court proceeded to take appellant's testimony, after it was clearly established that the hearing was to continue at a later date. At the conclusion of appellant's testimony, counsel for appellee introduced a separation agreement, signed by both appellant and appellee, in defense

1. Act of July 13, 1953, P.L. 431, *as amended*, Act of August 14, 1963, P.L. 872 (62 P.S. § 2043.31) *et seq.*

to appellant's claim for support. The court set dates by which briefs were to be filed and the hearing was generally continued.

On January 22, 1975, the lower court filed an opinion and order. The further hearing, contemplated by the parties and the court at the August 21, 1974 proceedings, had not taken place. The reasons for this lapse, and for the lower court's decision to enter an order prior to the completion of testimony, do not appear on the record. In its opinion, the court found that the "Separation Agreement" entered into by appellant and appellee did not make a fair and reasonable provision for support of the appellant-wife. Specifically, the court found that the agreement brought appellant "no more than what she would be entitled to in the way of a property settlement by virtue of the marriage." The order of court, dated January 16, 1975, directed appellee to pay $250.00 per month for the support of the appellant-wife.

On January 29, 1975, appellee filed a petition to vacate the order of January 16. A hearing date to review the above order was set for February 27, 1975. The appellant, the appellee and the attorney who represented appellant in the negotiation and drafting of the separation agreement all testified. On the basis of this hearing, the lower court issued a second opinion and order of court, dated May 2, 1975. This opinion stated that, after hearing the testimony on February 27, the court found that "adequate consideration passed to Mrs. McGannon to find the agreement to be binding on her in any action for support." This conclusion is supported by a list of "assets received by Mrs. McGannon which were not merely a division of jointly owned properties." By its order of May 2, 1975, the court vacated its order of January 16, 1975, and dismissed appellant's complaint in support.

For the reasons which follow, it is clear that the lower court's order of May 2, 1975, was correct in its result. One of the leading cases in this area is *Ratony Estate,*

443 Pa. 454, 277 A.2d 791 (1971). In that case, a husband and wife executed a separation agreement which divided the proceeds from the sale of their marital home and mutually released one another from any claim on or interest in any property owned by either at any time in the future. At the death of the husband, the wife sought, in contravention of the separation agreement, to take against the husband's will.

■ The court in *Ratony Estate, supra,* points out that the same legal principles are applicable to both antenuptial and postnuptial agreements. We begin with the "general principle of law which has existed for centuries that mutual promises are binding upon the parties thereto and furnish valid consideration. Section 103, Williston on Contracts (3d Ed. 1957); § 75, Restatement of the Law, Contracts; (further citations omitted)." 443 Pa. at 458, 277 A.2d at 793.

Proceeding in its discussion of the legal analysis applicable to these agreements, the court states:

"[a]n antenuptial or postnuptial agreement is presumed to be valid and binding upon the parties thereto and the party seeking to avoid or nullify or circumvent the agreement has, without any doubt, the burden of proving the invalidity of the agreement by clear and convincing evidence. That burden can be met by proving *either one* of the two following factors—(1) a reasonable provision for the claiming spouse was not made at the time of the agreement or (2) in the absence of such a provision, a full and fair disclosure of the other's worth was not made. Moreover, the reasonableness must be determined as of the date of the agreement and not in the light of hindsight . . . ." 443 Pa. at 460–61, 277 A.2d at 794.

■ In the instant case, the separation agreement entered into by the parties is a model of detail and clarity. Included are, *inter alia,* (1) a mutual release and dis-

charge of all rights, claims, demands or causes of action between the parties; (2) a waiver by each party of any and all rights to share in the estate of the other party which might otherwise result from the marital relationship; (3) a clause entitled "Acceptance by Wife" which states "[t]he wife hereby acknowledges that the provisions of this property settlement agreement are fair, adequate and satisfactory to her. The wife accepts the provisions in full and final settlement and satisfaction of all claims and demands for alimony, or for any other provisions for support and maintenance, and fully discharges the husband from all such claims and demands, except as provided in this Agreement." As former Chief Justice Bell asked in *Ratony Estate, supra,* "[c]ould any language be clearer?" 443 Pa. at 457, 277 A.2d at 793.

Here, the appellant-wife was fully and competently represented by counsel at all times during the negotiations leading to and the final signing of this separation agreement. The attorney who represented appellant during this period, Richard P. Jacob, Esq., gave extensive testimony at the February 27, 1975 hearing. Attorney Jacob testified that, during this negotiation period, he very carefully discussed and explained each provision of the agreement to the appellant a minimum of four or five times, including any changes which were made. He also stated that appellant was fully aware of her rights to seek support or a property settlement and that she was equally aware that the separation agreement would preclude any resort to these rights in the future. Appellant was thus fully cognizant of all the ramifications and consequences of her entry into this agreement.

Further, the separation agreement herein was clearly supported by consideration. As the previously quoted language from *Ratony Estate, supra,* points out, the promises exchanged by the parties are sufficient, of themselves, to make the agreement legally binding. Here, both parties bargained for complete personal and eco-

nomic freedom from one another. In addition to considerable economic benefit, the appellant established her right to live separately and alone in the family home. Attorney Jacob testified that this was one of appellant's principal concerns at the time.

■■ Finding this separation agreement valid, as we must, we turn to the previously quoted test from *Ratony Estate, supra*. It is first necessary to determine if the agreement made adequate provision for the appellant-wife. It is undisputed that, as a result of the agreement, appellant came into immediate ownership or eventual right to more than $250,000.00 in assets. It is appellant's contention that, because the separation agreement did not produce anything more for her than a division of jointly owned property would have, specifically the property in her own name plus one half of the jointly owned property, the agreement did not "adequately provide" for her. Appellant apparently misconstrues the meaning of this phrase. In *Ratony Estate, supra*, the court makes clear that "reasonable provision" is in no way equivalent to support, which appellant seeks in this action. The wife in *Ratony Estate* got only $310.00 plus her share of the parties' personal property, but the court found this to be "reasonable provision," considering the economic situation and the other circumstances of the parties. Other benefits accruing to the wife through the separation agreement were emphasized.

"(2) the wife acquired . . . a right to a separate existence for her life (a) without any interference from her husband, and (b) without any marital duties, such as the duty to cook or keep house; and (3) she secured her absolute liberty; and (4) she secured the important right to receive and keep, without any claim thereto from her husband or any rights of her husband therein any money (a) inherit, and (b) make from her work, or (c) win." 443 Pa. at 463, 277 A.2d at 796.

Appellant, in the instant case, has likewise derived the above-stated benefits. The requirement of "reasonable provision" is not determined, as appellant would have us find, by whether she received more or less by the separation agreement than she would have gotten in a property settlement or otherwise.[2]

Examining an antenuptial agreement, which is subject to the identical standard of review, the court in *Hillegass Estate*, 431 Pa. 144, 244 A.2d 672 (1968), outlined some of the factors to be considered.

> "*Reasonableness* will depend on the totality of all the facts and circumstances *at the time of the Agreement*, including (a) the financial worth of the intended husband . . . (e) the intelligence of the parties . . . ." 431 Pa. at 150, 244 A.2d at 675–76.

Here, although it is apparent from the record that appellee possessed considerable financial resources at the time the parties separated, the assets which devolved upon appellant, by the agreement, are similarly substantial. Appellant, although a housewife lacking familiarity with business and finance, had the constant advice and explanation of competent counsel throughout the negotiation and formulation of the agreement. There can be no doubt that her decision to enter into the agreement was informed and intelligent. Nothing in the record indicates that this action was in any way coerced or involuntary. Looking to the time the agreement was made, it is unquestionable that the appellant derived benefit by establishing her right to live separately and alone in the family home and by coming into immediate possession of certain assets. The appellee has, according to

2. This issue is disputed in the briefs and not completely clarified by the record. It appears that appellant received monetary benefits in at least three instances to which she would not have been entitled without the separation agreement. These benefits were not as numerous or as substantial as indicated in the lower court's opinion of May 2, 1975, but our decision here does not, in any event, rest upon this basis.

the record, complied to this point with the terms of the agreement and met his obligations under it. Under these circumstances, we find that the separation agreement involved herein made reasonable provision for the appellant.

The second matter into which we must inquire under *Ratony Estate, supra,* is whether full and fair disclosure was made by appellee, prior to the parties' entry into the agreement, of his financial worth. Appellant's claim of nondisclosure is principally based on certain General Motors Acceptance Corporation [GMAC] notes which appellee admittedly possessed but which were not mentioned in the schedules of assets attached to the separation agreement. Appellee asserts that the appellant and her attorney were fully aware of the existence of these notes, and that they were, tacitly or otherwise, outside the separation negotiations. This claim was fully supported by the testimony of appellant's former attorney (Attorney Jacob) at the February 27, 1975 hearing. Attorney Jacob testified that appellant told him about the GMAC notes, but that they were assumed to be outside the agreement, being in appellee's name alone. Further recounting the negotiations, Attorney Jacob stated that appellee fully cooperated in all efforts to determine the extent of his financial holdings. This cooperation included participation in personal interviews and providing access to or copies of the following: appellee's tax returns, his company books and records, stock holdings of the company and its employee trust and profit sharing plans and his portfolio of individual holdings.

"Full and fair disclosure does not require the disclosure of the exact amount of his or her property: (citations omitted)." *Hillegass Estate, supra,* at 151, 244 A.2d at 676.

We find that the appellee has reasonably complied with the requirement of full and fair disclosure.

The appellant has not met her "burden of proving the invalidity of the Agreement by clear and convincing evidence." *Hillegass Estate, supra,* at 150, 244 A.2d at 675.

The order of the lower court is affirmed.