## Dion v. Dion

*Michael G. Trachtman,* for plaintiff.
*Jerold S. Berschler,* for defendant.

Memorandum Opinion and Order Sur Petition Pursuant to Section 401(c) of the Divorce Code of 1980 Seeking an Order to Set Aside an Agreement

STEFAN, *J.,* July 24, 1984—On May 30, 1978, petitioner, Lona Dion (hereinafter wife), entered into an antenuptial agreement .with respondent, Kenneth B. Dion (hereinafter husband). The couple was married five days later on June 4, 1978. Wife, in anticipation of divorce, now petitions the court to set aside the antenuptial agreement (hereinafter agreement).

A valid antenuptial agreement must include either a reasonable provision for the intended spouse, or in the absence of such a provision, a full and fair disclosure of financial facts and circumstances. Estate of Freidman, 483 Pa. 614, 398 A.2d 615 (1978); Estate of Harrison, 456 Pa. 356, 319 A.2d 5 (1974); Perelman v. Perelman, 438 Pa. 112, 263 A.2d 375 (1970); Estate of Hillegass, 431 Pa. 144, 244 A.2d 672 (1968).

The agreement makes no provision for wife. By it she purports to waive all claims to husband's estate, to support and alimony, and to all property not in her name, whether acquired before or after the marriage. Therefore, the single issue before this court is whether, at the time the agreement was signed, husband made a full and fair disclosure of his financial circumstances.

Husband and wife met in late January, 1978. Husband was married at the time; nevertheless, shortly after the meeting, husband and wife began discussing marriage. Five days prior to their marriage they executed the antenuptial agreement which is the subject of this action. At the time of execution, husband was a successful entrepreneur, several years older than wife. In 1970, he had started Wall-To-Wall Sound, a chain of retail stores. Wife was then 23 years of age, and had not previously been married. She had worked for a time selling radio advertising, and had also done secretarial and modeling work; but she had no experience running a business, nor had she occasion to employ an accountant or an attorney.

Husband contends that he discussed with wife, on numerous occasions, his intention that they execute an antenuptial agreement. Wife contends that until she was at the attorney's office on May 30, 1978, she had no idea husband wanted an antenuptial agreement. In any event, it is undisputed that the agreement was drawn up, at husband's request, by his attorney.

On May 30, 1978, three business days before the wedding, husband took wife to his attorney's office for the purpose of having her sign the agreement. Present at the meeting were husband, wife, and husband's attorney. Husband's attorney recollects telling wife that she could have her own attorney; however, wife has no such recollection, and it is undisputed that wife did not have separate counsel. Husband's attorney, an invited wedding guest, considered himself attorney representing both husband and wife.

At the meeting, husband's attorney took information concerning the assets of husband and wife. Attached to the agreement is a handwritten schedule

of assets signed by the parties. Wife's assets are listed as $7,000 (including the $3,800 wedding ring purchased for her by husband). Husband's assets are listed at a total of $600,000, the majority of which was stock in Wall-To-Wall Sound, Inc., valued at $500,000.

This agreement between the parties is presumptively valid; accordingly, wife has the burden of proving its invalidity. Estate of Vallish, 431 Pa. 88, 244 A.2d 745 (1968); Hillegass, 431 Pa. 144. She must show that husband did not make a full and fair disclosure of the value of his assets. Parties to an antenuptial agreement are in a confidential relationship and have a legal duty to deal with each other in a forthright and honest manner. The law recognizes that an antenuptial agreement is much different from a commercial transaction where the parties are at arm's length. "Parties to an antenuptial agreement don't deal at arm's length, but stand in a relation of mutual confidence and trust that calls for the highest degree of good faith." Harrison, 319 A.2d at 7; Hillegass, 431 Pa. 144; Estate of Gelb, 425 Pa. 117, 228 A.2d 367 (1967); Estate of Kaufmann, 404 Pa. 131, 171 A.2d 48 (1961).

The agreement contains a full and fair disclosure clause: "The parties hereto have made a complete disclosure to each other of their respective financial conditions . . . ." Such a provision is prima facie evidence that a full and fair disclosure has been made. Vallish, 431 Pa. 88; Gelb; Estate of Snyder, 375 Pa. 185, 100 A.2d 67 (1953). Therefore, wife must establish, by clear and convincing evidence, that husband did not fully and fairly disclose the value of his assets at the signing of the agreement. Estate of Kester, 486 Pa. 349, 405 A.2d 1244 (1979); Friedman, 483 Pa. 614; McGannon v.

McGannon, 241 Pa. Super. 45, 359 A.2d 431 (1976); Hillegass, 431 Pa. 144.

As stated, the schedule of assets attached to the agreement lists Wall-To-Wall Sound stock at $500,000. In deposition testimony, husband explained that $500,000 was the book value of the stock, which was defined as assets minus liabilities. He had taken the figures from a 1977 certified financial statement. However, for the purpose of estimating the worth of an ongoing retail concern, book value was an arbitrary measure to use. It did not take into account Wall-To-Wall's history and prior earnings, factors commonly considered when determining the value of a company. Certainly, these would have been considered had husband been setting an asking price for the sale of the company. Husband admitted that Wall-To-Wall stock was worth probably three times book value, or $1,500,000 rather than the $500,000 listed in the agreement.

In light of the confidential relationship; wife's relative lack of business acumen; her lack of independent counsel; lack of financial statements provided to wife at time of signing; and finally, husband's own deposition testimony that the stock was worth probably three times disclosed value; we hold that wife has shown by clear and convincing evidence that a full and fair disclosure was not afforded her at the signing of the agreement.

Husband strongly asserts that an exact amount need not be given for full and fair disclosure. Friedman, 483 Pa. 614; McGannon, 241 Pa. Super. 45; Emery's Estate, 362 Pa. 142, 66 A.2d 262 (1949). It is true that an exact amount need not be given. But this is not interpreted to permit gross undervaluation of assets, listing them at one-third their true worth, as was done by husband. If this

were permitted, the requirement of a full and fair disclosure would be meaningless.

The Friedman case concerned an antenuptial agreement that made no provision for the wife. In that case, the court focused its inquiry on whether a full and fair disclosure of assets had been made. The husband's estate was listed at $532,000, some stocks were listed but not valued, and a lot was also listed but not valued. The husband died within days of signing the agreement, and an inventory was taken of his estate. A discrepancy of less than 14 percent was found between the value disclosed in the antenuptial agreement and the value listed in the inventory. The court found that the discrepancy was not material and that a full and fair disclosure had been made. Unlike the case sub judice, the court noted: "This is plainly not a case in which decedent (husband) failed to set forth his assets in writing and grossly understated their total value." Friedman, 483 Pa. at 628 n.7.

When wife, herein, signed the agreement she knew that husband was a man of substantial means, and that the Wall-To-Wall chain included 18 stores and a warehouse. That did not mean that wife was capable, on her own, of determining the value of Wall-To-Wall stock. When she was signing the agreement relinquishing all statutory claims, husband was not relieved of his duty to make a full and fair disclosure of the value of the stock to her. Kaufmann, 404 Pa. 131; Emery, 362 Pa. 142; Flannery's Estate, 315 Pa 576, 173 A. 303 (1934).

Barnhart v. Barnhart, 376 Pa. 44, 101 A.2d 904 (1954), relied on by husband, is not on point. It involved a unilateral release rather than an antenuptial agreement. The court made a clear distinction between the two.

Wife has shown, through clear and convincing evidence, that husband grossly understated the value of Wall-To-Wall Sound stock, his major asset. When a claimant has proven that material misrepresentations were made, it is presumed that the contract was entered into in reliance upon these misrepresentations, and the burden to prove otherwise is upon the party seeking to uphold the agreement. Harris Estate, 431 Pa. 293, 245 A.2d 647 (1968); Hillegass, 431 Pa. 144; Vallish, 431 Pa. 88; Gelb, 425 Pa. 117. There is no evidence in the record showing that wife did not rely on the disclosure of assets attached to the agreement.

Accordingly, we enter the following

## ORDER

And now, this July 24, 1984, after argument and consideration of briefs, the petition pursuant to section 401(c) of the Divorce Code of 1980 seeking an order to set aside an agreement is hereby granted. It is ordered and decreed that the antenuptial agreement is set aside.