## Dahms v. Dahms

*Robert E. Gabler,* for plaintiff.
*Robert G. Moffett,* for defendant.

RUFE, *J.,* April 10, 1985—Plaintiff initiated this action to set aside the conveyance of a marital residence pursuant to a post-nuptial agreement between the parties. The bases of such requested relief is that the agreement executed October 21, 1983 is invalid in that defendant exerted undue influence on plaintiff in securing her signature to the document, that acquiescence in the contract was fraudulently obtained, that the contract was supported by inadequate consideration, and a mistake of law, or fact, occurred to the detriment of plaintiff. Defendant has responded that the deed in question should not be set aside, that the agreement in question was a valid and enforceable contract between the parties.

## FINDINGS OF FACT

1. Plaintiff and defendant were married on February 5, 1972, when plaintiff was 17 years old.

2. At the time of the marriage, plaintiff was in the eleventh grade and left school at that time.

3. The parties have one child, Jason Dahms, age 12.

4. On August 29, 1975, the parties purchased real estate located at 147 N. 9th Street, Quakertown, Pa., taking title as tenants by the entireties.

5. Purchase price of the above property was $30,500. Of this amount, plaintiff's father provided the down-payment and settlement costs of $6,600.

6. During the term of the marriage, plaintiff provided the services of mother and homemaker in addition to being employed full or part-time throughout. Income from plaintiff's employment was used for marital expenses.

7. On October 21, 1983, plaintiff and defendant executed an agreement providing for conveyance of the jointly held real estate from plaintiff to defendant for the consideration recited of one dollar and a waiver of all plaintiff's rights to an equitable distribution of marital property (including this parcel of real estate) under the Divorce Code of 1980.

8. Plaintiff believed that the signing of the deed and agreement were only to effect the change of names listed on the deed to the family residence and was unaware of any effect the transaction might have on her property rights under the Divorce Code of 1980.

9. At the time the agreement and deed were executed, plaintiff understood that the parties had agreed to a temporary separation during which time plaintiff would seek counselling.

10. Copies of the documents executed October 21, 1983, were not provided to plaintiff at that time.

11. On October 31, 1983, plaintiff left the marital residence on a temporary basis while she sought counselling.

12. Defendant filed a complaint in divorce with this court on November 2, 1983.

13. Paragraph 8 of the divorce complaint states: "The parties have not entered into a written agreement as to . . . property division."

14. The court issued a divorce decree on February 28, 1984, totally unaware of the existence of the October 21, 1983 agreement and, therefore, not incorporating any written agreement.

15. When the parties executed the October 21, 1983 agreement, plaintiff was not represented by legal counsel, nor advised of her property rights under the Divorce Code.

16. In acquiescing to the agreement, plaintiff relied on defendant to make provisions not inconsistent with her interests and did not believe she required independent counsel's advice.

17. Plaintiff also did not believe that she had any choice in the execution of the deed and agreement, since the papers were formalized for signature and she did not want to question defendant's arrangements.

18. Defendant at all times was cognizant of the financial position of the family and specifically the value of the jointly held residence.

19. No disclosure was made to plaintiff concerning the financial status and assets of defendant and the family.

20. Most of the major financial decisions for the parties were made by defendant: e.g., construction of an addition to the family residence, application for car and other loans and purchase of vehicles. Plaintiff was routinely required to sign joint tax returns and admits that she did not read the returns, but relied on defendant to act in their best interest.

21. Fair market value of the parties' residence at the time of separation, October 1983, was $66,000 subject to a mortgage balance of $21,317.

22. The one-dollar consideration recited in the deed was the only consideration received by plaintiff in return for conveyance of the property.

23. Following the separation, plaintiff only removed personal items and gifts specifically for herself from the house and received no portion of the household furnishings or appliances.

24. Presently, plaintiff is contributing $60 per week toward the support of the minor child and exercises her visitation rights respecting the child.

25. When plaintiff signed the deed and agreement and separated from defendant, she had no bank accounts or money.

26. Plaintiff's earnings during October 1983 were approximately $154 and $175 per week. At the time of trial, plaintiff was earning $4.75 per hour for 40 hours per week.

## DISCUSSION

At issue here is the validity of the parties' post-nuptial agreement of October 21, 1983. The agreement herein is a post-nuptial agreement as opposed to a separation agreement by the nature of the document, inasmuch as the agreement purports to settle property rights definitely, not merely provide for separation and support. Commonwealth ex rel. Dischenger v. Dischenger, 23 Bucks Co. L. Rep. 194 (1972).

The law is well-settled that ante-nuptial and post-nuptial agreements are presumably valid and the burden of proving the agreement invalid, by clear and convincing evidence, is on the party seeking to avoid or nullify the agreement. Ratony Estate, 443 Pa. 454, 277 A.2d 791 (1971). The evidence required must show that the other spouse " 'at the time of the agreement made neither (a) a reason-

able provision for the intended spouse, nor (b) a full and fair disclosure of his (or her) worth.' Hillegass Estate, 431 Pa. 144, 150, 244 A.2d 672, 675 (1968)." In Re. Estate of Kester, 486 Pa. 349, 353, 405 A.2d 1244, 1246 (1979). Reasonableness of such provisions is to be determined at the time of the making of the contract, not from hindsight perspective. Ratony, supra; Kaufmann Estate, 404 Pa. 131, 171 A.2d 48 (1961). Parties to such agreements do not deal from standard "arms-length" positions as with most contracts, "but stand in a relationship of mutual confidence and trust that calls for the highest degree of good faith." McClellan Estate, 365 Pa. 386, 407, 75 A.2d 595, 598 (1950).

The agreement challenged by this litigation is very one-sided and not only fails to make provision for plaintiff, but makes no reference to the disclosure required to ensure the validity of the agreement. Disclosure is not a fact which the court will infer from the mere existence of a marital relationship. Hahn Estate, 7 D.&C.3d 438 (1978). Defendant asserts that "plaintiff voluntarily chose to remain uninvolved and uninformed about the value of the parties assets and her legal rights." However, in order to have a valid conveyance between marriage partners, the party relinquishing rights must clearly understand the rights he or she is foregoing. The testimony at trial depicted not a woman who was uninterested in finances, but rather afraid and too intimidated to question her husband's actions. She stated several times that when loans were obtained or tax returns prepared the papers were prepared at her husband's insistence and all she did was sign the documents. Plaintiff trusted her husband to act in her best interest and did what he wanted because it did not matter what she wanted to do anyway. We conclude that plaintiff did not have knowledge of

the worth of the residence and that defendant failed to disclose such information.

Related to the concept of disclosure is the issue of plaintiff understanding the nature of the documents presented to her. Based on the evidence presented, we find that plaintiff believed she was only changing the name of the deed, not forever relinquishing any rights she had in the property.

Defendant asserts that plaintiff has not sustained her burden of proof for fraud. We disagree. Where the provision for the contesting spouse is grossly disproportionate in size to the husband's estate, fraudulent concealment will be presumed and the burden of proof is shifted to the person seeking enforcement of the agreement. McClellan, supra, 405, 597. Fraud is in essence deceit, and it consists of:

". . . anything calculated to deceive, whether by single act or combination, or by suppression of truth, or a suggestion of what is false, whether it be direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture. It is an artifice by which a person is deceived to his disadvantage. McClellan Estate, 365 Pa. 401, 407, 75 A.2d 595 (1950)." Shane v. Hoffman, 227 Pa. Super. 176, 181-182, 324 A.2d 532, 536 (1974). See also Quashnoch v. Frost, 299 Pa. Super. 9, 445 A.2d 121 (1982). Plaintiff testified that she felt the parties were only arranging a temporary separation and that she was led to believe that it was necessary to change the names on the deed to secure a home for her minor child. Defendant was the party who procured the services of an attorney and ordered the papers to be drawn. Defendant did not disclose that he was then contemplating a divorce and the testimony indicates that he always controlled everything. Throughout the marriage defendant made the decisions and controlled the finances. In defen-

dant's course of conduct concerning the transfer of property and procuring plaintiff's signature on the deed and agreement of October 21, 1983, we find that defendant exerted undue influence and perpetrated a fraud. Accordingly, we enter the following

## CONCLUSIONS OF LAW

1. The agreement signed by the parties October 21, 1983, is a post-nuptial agreement providing for a division of real property.

2. The conveyance of the parties' jointly held property by plaintiff to defendant was not a gift.

3. The agreement in question did not make adequate provision for plaintiff, nor did she receive adequate consideration for her conveyance of the marital residence.

4. Defendant did not fulfill his affirmative obligation to provide complete disclosure of the parties' financial status to plaintiff in lieu of adequate provision for plaintiff in the agreement.

5. Defendant misrepresented the parties' financial status to plaintiff.

6. The agreement and deed of conveyance were procured by fraud and undue influence on the part of defendant.

For the foregoing reasons, we enter

## DECREE NISI

And now, this April 10, 1985, it is adjudicated and decreed that the relief requested by plaintiff to have the agreement and deed of October 21, 1983, recorded in Deed Book 2527, page 104 & c, set aside, is hereby granted, and the said deed and agreement are hereby set aside. The prothonotary is directed to notify the parties of this decree nisi and, if exceptions are not filed within 20 days, to enter this as a final decree.